## YOUNG *a.* BRUSH.

*Court of Appeals, January Term,* 1864. *Again, Supreme Court, First District; General Term, September,* 1864.

DUTY OF TESTAMENTARY TRUSTEE TO PROVE WILL. — COST OF FOREIGN PROBATE. — REIMBURSING TRUSTEE. — JUDGMENT ON REMITTITUR. — RESTITUTION UNDER ORDER FOR NEW TRIAL.

Where a will leaves personal property situate in this State, and real property situated in another State, to an executor, who is also made trustee of the property, and the will is proved in this State as being the residence of the testatrix, it is incumbent on the executor to prove the will in such other State; and the executor, on accounting as such trustee, should be allowed the costs of both proceedings, unless they were made in bad faith.

Costs incurred by a trustee in protecting the estate confided to his care should be reimbursed to him out of the estate; and, if the estate consists of both real and personal property, from the personal property first. And it is error not to allow such costs upon an accounting, where a decree of a court of foreign jurisdiction directs them to be paid by the trustee out of the estate of the deceased, and they have actually been paid under such decree.

------

A judgment of the Court of Appeals ordering a new trial is not a final judgment in the cause.

It is irregular to permit a judgment of restitution to be entered without notice to the party to be affected by the order, where it has not been directed by the appellate court in the remittitur.

Where the appellate court directs a new trial, restitution will not be directed unless the remittitur contains such direction, or the judgment is reversed for such reasons as would preclude the plaintiff from succeeding in such new trial.

I. *Court of Appeals, January,* 1864.—Appeal from a judgment.

Catharine C. Young by her will left certain personal property in the city of New York, and certain real property in New Jersey, to David Brush, as executor in trust for her son, George Young, during his life, with certain limitations over. The will was proved before the surrogate of the city and county of New York, who set aside the limitations over. Some questions were raised, upon the probate, as to the residence of Mrs. Young. The will was subsequently proved in the State of New

Jersey.   After the death of David Brush, the executor, and of George Young, the *cestui que trust*, Catharine B. Young, who was the administratrix with the will annexed of Mrs. Young, brought this action against the personal representatives of David Brush, to compel an accounting, and for payment of the sum found due to her.

The action was referred, and the referee reported $5,179.29 due from defendants.   On the accounting the referee refused to allow the items of the expenses of the probate in New Jersey, and the costs of this action, and also charged the executors with interest.   From the judgment entered on the referee's decision the defendants appealed to the general term of the Supreme Court, who corrected the judgment so far as the item of interest was concerned, but affirmed the rest.   (38 *Barb.*, 294.) From that decision the defendants appealed to this court.

*Charles H. Smith*, for the appellants.—I. The facts that it would depend on the then, if not now, doubtful question of domicil whether this probate would be conclusive when the executor, after the death of George Young, should be required to account;—that the question of undue influence, on which the disputed portions of the will depended, was one which could not be safely left to be investigated at the happening of the uncertain event of George Young's death;—that four counsel were employed by the contestants who litigated both in New York and New Jersey at great expense and with great vigor—that these counsel did not raise the point of domicil; that the New Jersey courts established the will, so that it stood confirmed in New Jersey and set aside in New York; that those courts, by their decrees, allowed these very expenses; and, above all, the fact that there is no evidence impeaching the good faith and prudence of the executor, and that for twenty-three years no complaint was made of improper use of the funds of the estate in litigation, make a question of reasonable and probable cause which is a question of law, and upon which it should be held that the executor was entitled to his reasonable expenses (*Story Eq.*, § 65,) of proving the will in New Jersey.   (Bulkley *a.* Keteltas, 2 *Seld.*, 384; S. C. on new trial, 2 *Duer*, 273; Besson *a.* Southard, 6 *Seld.*, 236–240; Vedder *a.* Fellows, 20 *N. Y.*, 126; Spencer *a.* Bank of Salina, 3 *Hill*,

520; Small *a.* Smith, 1 *Den.*, 583; Steves *a.* Oswego, &c. R.R., 18 *N. Y.*, 422.)

II. The case is properly framed to present this question as a matter of law. The evidence set out shows a clear case of probable cause which a court would have been bound if it had been a jury trial, not to leave to the jury, but to decide as matter of law. (Pratt *a.* Foote, 5 *Seld.*, 463–5; Spencer *a.* Ballou, 18 *N. Y.*, 327–338; Brown *a.* Penfield, 24 *How. Pr.*, 64.) The expenses are disallowed in bulk. They were not disallowed as being unreasonable in amount, and the account shows the rejected items included all the New Jersey expenses.

III. The question of domicil had nothing at all to do with the case, further than it bore upon the question of probable cause for proving the will in New Jersey.

IV. The executor was made a trustee of the real and personal on the same trusts as to both. After the death of George the realty was to be sold and distributed with the personalty as one fund and to the same purpose. Expenses of proving a will of real and personal estate are chargeable in the first instance, and as far as the executor is concerned, on the personalty, especially where the beneficiaries are the same persons, and the realty is unproductive and not to be sold until the death of a person, for whose use it is given for life. If there are any equities between the distributees as to who shall pay these expenses, those are to be determined when the distribution takes place. (Mesick *a.* Mesick, 7 *Barb. S. C. R.*, 120, 124, 5.)

V. *Non constat*, but by the law of New Jersey it was necessary to prove the will there. It was for the plaintiff to prove what that law was.

VI. The decision of the New Jersey courts was not only material, but conclusive on the question of the expenses. Those courts had jurisdiction, and the *cestuis qui trust* were either parties or represented by the executor, and no fraud is alleged.

*Marshall S. Bidwell*, for the respondent.—I. There was no dispute as to the amount received by David Brush. The liability of the defendants as executors to account to the plaintiff for this amount was clearly established.

II. They claim to be allowed certain charges and payments. The *onus* as to those was on them. If they did not establish them—if it was even doubtful—the referee could not allow them.

III. The referee allowed to the defendants as much as they were entitled to. Indeed, he granted to them considerably more than he should have done. (*Code*, §§ 307, 308; 3 *Code R.*, 21, 192; 4 *How. Pr.*, 252; 5 *Ib.*, 153; Willcox *a.* Smith, 26 *Barb.*, 316, 329, 330.)

IV. The probate, granted by the surrogate of New York, was conclusive on all parties. 1. Brush, the executor, not only was a party to the proceeding, but he himself made the application and obtained letters testamentary. It is, in the courts of this State, absolutely conclusive on all the parties. 2. There was no personal property in New Jersey. There is no proof of any, and it appears, affirmatively, that there was not any. 3. Mrs. Young was not domiciled in New Jersey.

V. There was not competent or sufficient evidence of the proceedings in New Jersey. The papers produced purported to be copies of only part of the proceedings in the court. The whole should have been produced. (2 *Cow. & Hill*, 1059.

VI. These proceedings were binding only on those persons who were parties to them. The plaintiff, although a child of the testatrix, does not appear to have been a party.

VII. The proceedings in New Jersey were instituted in relation to the real estate owned there. The expenses of these proceedings could not have been charged upon the personal property in this State, even if all persons interested had been parties in such proceedings. It was manifest that this was the understanding of all parties, or that there was some arrangement or compromise in relation to them; as it appears from the accounts that none of the other parties received any thing from the estate on account of their costs, although they were as much entitled to them as David Brush was to his costs and expenses. It is evident that subsequent to the proceedings in New Jersey, the parties had settled the matter by compromise and agreement.

VIII. His claim was barred by the lapse of time, both by the Statute of Limitations, and by the general principles of equity jurisprudence. If he intended to claim them, he should

have presented his accounts to the surrogate in due season, and had them allowed. (Treat *a*. Fortune, 2 *Bradf*., 116; *Dayton on Surrogates*, 394, 3 ed.; *Laws of* 1837, 531, ch. 460, § 37.)

DAVIES, J.—There is no allegation that the payments disallowed by the referee were not made in good faith by the executor and trustee, and I am at a loss to perceive any substantial reason why they should not be allowed. It is to be borne in mind that the complaint in this action is in the nature of a proceeding in equity, to call upon the executor and trustee for an account and transfer, and deliver over to the administratrix, with the will annexed, all the estate of the deceased. It is not a proceeding before the surrogate to call him to account as executor solely; and therefore it is that all the just and equitable payments made by the executor and trustee, in the management of the estate while under his control, are proper matters to be now disposed of and adjudicated.

It is quite clear to my mind that the executor and trustee but performed a duty incumbent upon him, in seeking to establish the will in New Jersey. There was real estate which passed by the will, and which by its provisions was vested in the executor as a trustee. On the death of the *cestui que vie* it was to be sold by him, and the proceeds distributed according to the terms of the will. He could not properly protect the property, or make a good title to it on such sale, unless the will was duly proved and established in the State where the land was situated. It became a matter of necessity, therefore, that the will should be proved in New Jersey; and when the representatives of the executor and trustee were called upon in equity to account for the estate of the decedent received by their testator, all the payments made by him, and expenses legitimately incurred by him, in establishing his title to the estate, so confided to him, they were entitled to be credited with such payments. It is thought to be well settled that a trustee while acting under a general trust, is entitled to be allowed for all disbursements for taxes, repairs, salaries, insurances, and for all other charges and expenses which he in good faith thinks proper to pay. (7 *Ves.*, 480; 3 *Russ*, 458; 2 *Johns. Ch.*, 14; *Ib.*, 619.)

There can be no doubt that costs incurred by the trustee in protecting the estate confided to his care, and paid by him, should be reimbursed to him out of the estate. In the present case, I think the decrees of the courts in New Jersey directing the costs of the proceedings there to be paid by the trustee out of the estate of the decedent, afforded him warrant and protection for making such payment; and it was error in the learned referee not to have allowed such payment to his representatives. They ought not to be called upon, after this great lapse of time to furnish any other evidence of the necessity of such payment.

I think the items should have been allowed, and the referee having found that they were in fact paid at the dates, and for the purposes specified, the total amount thereof should be deducted from the amount of the judgment in this action. They are enumerated in the referee's report.

A new trial should be ordered.

Rosekrans, J.—Catherine C. Young, by her will not only appointed David Brush her executor, but devised to him certain real estate, and all her personal property in trust, to receive the rents, issues, and profits of the real estate, and the interest of the personal property, and pay the same, excepting the taxes and necessary repairs of the real estate, to George Young, the son of the testratrix during his natural life. The real and personal estate of the testatrix was thus made the subject of one and the same trust by the will, and the title of both kinds of property was devolved upon the trustee for the purposes of the trust. The will contains no directions as to the particular fund out of which the reasonable expenses of the trustee incurred in relation to any portion of the property, which is the subject of the trust, shall be paid; and it is difficult to understand upon what principle it can be claimed, that such expenses shall be charged to the particular kind of property, in the management of which the expenses were incurred. The general rule is that trust-property shall reimburse a trustee for all his charges and expenses properly incurred in the execution of the trust (Worrall a. Harford, 8 Ves., 8), and such charges and expenses constitute a charge or lien on the trust-estate in favor of the trustee, and he is not to be compelled to part with the legal estate until

his claim is discharged. (8 *Ves.*, *supra ;* *Hill on Trustees*, 567, 570.) In the case of the Attorney-general *a.* The Mayor of Norwich (2 *M. & C. R.*, 406, 424), Lord Cottingham stated it to be quite clear according to the rule which applied to all cases of trust; that if necessary expenses are incurred in the execution of a trust, or in the performance of duties thrown on any parties, and arising out of the situation in which they were placed, such parties are entitled, without any express provision for that purpose, to make the payments required to meet those expenses out of the fund in their hands belonging to the trust; and he said such was the rule of courts of equity and at common-law. This language implies that the trustee has the whole trust-fund to which he may resort for the reimbursement of his reasonable expenses incurred in the execution of the trust. Where there is nothing in the instrument creating the trust, limiting the trustees to a particular fund, or kind of property, for reimbursement of such expenses, a rule which should thus limit him, might operate unjustly upon him, and tend to embarrassment in the discharge of the duties of his trust.

The account rendered by the trustee does not disclose that he ever received any thing from the real estate in New Jersey, which was a part of the subject of the trust. Doubtless he allowed the *cestui que trust* to occupy this property, and appropriate the rents, issues, and profits to his own use; and yet, if not absolutely necessary, it must be conceded to have been prudent on the part of the trustee to have the will proved in New Jersey for the purpose of protecting his title to this property, and the interest of the *cestui que trust*, as well as the interest of those who were entitled in remainder. It might have become necessary to institute actions in relation to this property which could not have been maintained without the probate of the will. Real estate is governed by the laws of the State in which it is situated. Not only houses and lands, but charges on lands, including trust-estates, are declared in law to be immovables, and governed by the *lex rei sitæ*, and no interest can be acquired in such property except by the persons, and under such circumstances as the local law prescribes. The validity of every disposition of real estate must depend upon the law of the county in which it is situated. (*Story's Conf. of Laws*, § 424.)

The trustee is presumed to have acted in good faith, and in the absence of any evidence of bad faith on his part, it cannot be affirmed that his submitting the will for probate in New Jersey, by which his title to real estate in that State was acquired, was not in accordance with the dictates of sound discretion. Indeed, it is questionable whether it would not have been an act of gross negligence on the part of the trustee to have omitted the probate of the will in the State of New Jersey. If it be conceded that the domicil of the testatrix at her death was in the State of New York, and that the distribution of her personal estate must be in accordance with the laws of this State, it by no means follows that the trustee is to be deprived of the personal estate in his hands as such trustee, until his reasonable expenses are fully paid, which he has incurred in relation to all the subjects of the trust. The ruling of the referee, and the decision of the Supreme Court did not regard the character of David Brush as trustee. He was called upon to account simply in the character of executor of the will, having control only of the personal estate of his testatrix, and his rights as trustee of both the real and personal estate were not considered.

The referee expressly finds that the expenses charged in the account for the litigation arising out of the probate of the will in New Jersey were actually incurred; that the decrees of the court in New Jersey were made, admitting the will to probate in that State, and directing that the taxable costs of the parties to the litigation, together with their reasonable counsel-fees, be paid out of the estate of the testatrix; but he finds that those decrees were immaterial on the question of the allowance of the expenses of the litigation in those courts out of the personal estate of the testatrix. The litigation having been shown, and the expenses to have been incurred upon an issue of *devisavet vel non*, the trustee was entitled to all his reasonable costs and expenses, to be paid out of the estate, independent of the decrees in the State of New Jersey. (Bradford *a.* Boudinot, 3 *Wash. C. C. R.*, 122.)

The plaintiff was only entitled to the balance of the trust-fund after the trustee had been allowed his costs as between solicitor and client, and other necessary and reasonable charges.

These reasons are sufficient to require a reversal of the judg-

ment. It is also a general rule that trustees are entitled to costs of litigation in relation to the trust-fund where there is no evidence of bad faith on their part, and we think the judgment in this case is erroneous in not allowing the defendants the costs of this litigation.

The judgment should be reversed, and a new trial ordered.

Judgment reversed, and new trial ordered. .

---

II. *Supreme Court, September,* 1864.—Appeal from an order for restitution upon the remittitur from the Court of Appeals awarding a new trial.

After judgment had been entered by the plaintiff on the referee's report in this action, and pending the appeal above reported, the defendant paid to the plaintiff " $3,000, on account of the judgment by consent, without prejudice to their rights on the appeal." The Court of Appeals having reversed the judgment, and ordered a new trial, as above stated, the defendants obtained from the special term of the Supreme Court a judgment on the remittitur in the usual form, and awarding restitution of the $3,000 and interest against the plaintiff. The plaintiff moved to set aside the judgment for irregularity, and read affidavits in support of his motion. The motion was denied in the first instance, but with leave to renew, and it was stipulated in the order entered that on a renewal the defendants might apply, without further notice, for such order or judgment as they were entitled to. The motion being renewed was denied, and the plaintiffs appealed.

*Marshall S. Bidwell,* for appellant.—I. This court had no jurisdiction to make the order. It was void. The Court of Appeals alone had jurisdiction. (*Code,* § 330.) And the jurisdiction has been exercised by that court on the defendant's motion, and his motion has been denied.

II. If this court had had jurisdiction to make an order of restitution, it could not have ordered a judgment or awarded an execution.

III. This court has no jurisdiction to give judgment in any case except on trial, or inquest, or demurrer.

IV. The appellate court has merely ordered a new trial. The judgment has merely been set aside, not reversed. This was a reason for refusing the defendant's motion for restitution.

And such was the opinion expressed in the case of Estus a. Baldwin (9 *How. Pr.*, 80).

*Charles H. Smith*, for respondent.—I. It was discretionary with the judge to whom application for judgment on the remittitur was made, to require notice or not as he saw fit. (Hosack a. Rogers, 7 *Paige*, 108; Chautauqua Bank a. White, 23 *N. Y.*, 347.)

II. Where the record shows the judgment has been paid, a restitution is matter of course. (Safford a. Stevens, 2 *Wend.*, 158; Sheridan a. Mann, 5 *How. Pr.*, 201.)

III. This court had jurisdiction to award restitution. The provision of section 330 of the Code is an additional remedy, and not a substitute for the former practice.

IV. The payment was not voluntary but because of the judgment, which has since been reversed, and was made "without prejudice to the defendant's rights on the appeal," which looks to a restitution. (Close a. Stuart, 4 *Wend.*, 95; Lott a. Swezey, 29 *Barb.*, 87.)

By the COURT.*—LEONARD, J.—The judgment of the Court of Appeals was not final. A new trial was directed. On such new trial the plaintiff may be found to be entitled to the money which the defendants have paid to her.

In the case of Close a. Stuart (4 *Wend.*, 95), so much relied on by the respondent's counsel, the appellate court had reversed the judgment of the court below for reasons which would preclude the plaintiff from maintaining that action, even if he availed himself of the privilege of a new trial, which was granted to him.

In such a case a restitution would be an appropriate relief, if the erroneous judgment had been corrected.

That case presents no analogy here.

It is irregular to permit a judgment or order of restitution to be entered, where it has not been directed by the appellate

---

* Present, LEONARD, CLERKE, and SUTHERLAND, JJ.

court in the remittitur, without notice to the party to be affected by the order.

The chancellor contemplates such a contingency in the case of Hosack *a.* Rogers (7 *Paige,* 108), wherein he directs the remittitur in future to be presented to the chancellor before entering judgment, to see whether anything special is required which entitles the opposite party to notice. He says nothing to warrant the conclusion that it is in his discretion to direct the entry of judgment on the remittitur without notice, where anything special is required, as the learned counsel for the defendant has assumed. The case is an authority for the opposite practice, where an authority for judgment is sought for, which requires the payment of money not directed in the remittitur.

The stipulation contained in the order of the 9th of March, 1864, brings the question before the court on the merits. The want of notice of motion is not, therefore, fatal to the order appealed from.

Restitution is to be directed where property or rights have been lost by an erroneous judgment.

It is not entirely certain here that the defendants have lost any thing by the judgment which has been reversed.

The money in question was voluntarily paid by the defendants, under a stipulation that the payment was " without prejudice to the defendants' rights on the appeal." The stipulation does not reach the question of restitution. The Court of Appeals possibly so considered it when the same application was before that court.

There is no case to be found where restitution has been ordered, unless it was clear that the party to whom the money had been paid held it without any right. That point is not clear in this case. The judgment of reversal is not final. A new trial is directed. Nothing has been decided in the appellate court which renders it certain that the money has not been rightly paid to the plaintiff, and that she will be finally adjudged to be entitled to hold it.

The denial of restitution now will be no bar to the future determination of the question when the rights of the parties have been ascertained, whether the restitution be then sought by action or motion.

The order appealed from should be modified so as to permit the judgment to stand to the extent only of the terms of the remittitur.

The appellant is entitled to $10 costs of this appeal, and $10 costs of the motion at special term. The order of the special is, in other respects, reversed.