## HEALY v. WOSTENBERG, ET AL.

(No. 1824; Dec. 11, 1934; 38 Pac. (2d) 325)

376

For the plaintiff and appellant there was a brief by

*C. H. Harkins* and *D. J. Harkins,* of Worland, and oral argument by *C. H. Harkins.*

For the defendant and respondents there was a brief by *Charles L. Brome,* of Basin; *E. E. Enterline* and *Madge Enterline,* of Casper, and oral argument by *E. E. Enterline.*

RINER, Justice.

In this case, a judgment of the District Court of Washakie County directing the issuance of a writ of restitution of the possession of certain real property located in said county is brought here by direct appeal. The judgment was entered on the application of Effie Isadora Wostenberg, as administratrix of the estate of Henry August Wostenberg, deceased, subsequently generally referred to herein as the "petitioner" or as the "administratrix," and ran against the appellant Alex Healy and "any and all persons holding and in possession under him." Healy may conveniently be mentioned at times in the course of this opinion as the "plaintiff." The facts shown by the record before us appear to be these:

On December 21, 1920, Henry Wostenberg and Isadora Wostenberg, husband and wife, executed and delivered to one B. T. Joslin their promissory note for $3,780, payable in seven installments of $540 each, the last payment being due December 25, 1927. The makers of the note agreed therein that, in case the payment of any installment was defaulted when due, all the unpaid balance should at the holder's election become at once due and payable without notice. This note was secured by a mortgage of even date therewith, given by the Wostenbergs to Joslin, upon some 394.38 acres of land in Washakie County, Wyoming, said mortgage containing a clause relinquishing all rights under and by virtue of the homestead exemption laws of this state, the acknowledgment thereof by the mortgagors also stating that each of them "expressly waived and released" all their rights under said exemption laws. This note and mortgage were, on December 21, 1921, assigned to Alex Healy by Joslin. The mortgagors fail-

ing to meet one of the payments required by the note aforesaid, Healy instituted foreclosure proceedings by advertisement under the power of sale clause contained in the mortgage, with the result that, on September 25, 1922, he received a sheriff's deed to the property above mentioned. It appears there was a prior mortgage on the land for $18,000, and the deed was made subject to it.

Meanwhile and on November 29, 1921, the husband Henry August Wostenberg died, and on December 31 of that year, by court commissioner's order subsequently confirmed by the District Court of Washakie County, his widow Effie Isadora Wostenberg was appointed administratrix of his estate; she duly qualified as such, and letters of administration were issued to her March 2, 1922. An inventory was filed in said estate in which the appraisers set forth that they valued a portion of the property aforesaid, to-wit, 160 acres more or less, describing it by section, subdivision, township, and range, together with its improvements, at the sum of $12,000, and stated additionally that:

"We are informed that Effie Isadore Wostenberg claims homestead exemption rights in this real estate, and we find that the value thereof exceeds $2500.00, and that same cannot be divided without material injury in value to the separate parcels thereof."

The administratrix having declined to surrender possession of the premises covered by the mortgage and subsequent deed aforesaid, in consequence Healy, on December 16, 1922, brought action in the District Court of Washakie County to obtain it. His petition was in the usual form prescribed in actions to recover realty, and named "Effie Isadora Wostenberg, individually, and Effie Isador Wostenberg, Administratrix of the Estate of Henry August Wostenberg, Deceased, and Henry Wostenberg," as defendants therein. Henry Wostenberg, as appears by his answer in the case,

seems to have leased the premises thus in litigation from the administratrix on March 8, 1922, for a period of one year, and, hence, was made a party to the action.

The administratrix, in her answer, after denying all of the allegations of the petition, except as "specifically admitted," admitted its averment as to her official character relative to said estate, and then set forth as affirmative matter, in substance, that her husband owned the lands in question prior to his death, and she and he with their minor children lived upon the land described in plaintiff's petition for many years, as their home; that her husband died November 29, 1921; that she is in possession of said lands as administratrix; that since her husband's death, she and the children have been living upon said land; and that the defendant, the widow of Henry August Wostenberg, "has and claims homestead and homestead exemption rights therein for the benefit of herself and her minor children." The answer concluded by referring to the plaintiff's title, as claimed under mortgage foreclosure and sheriff's deed thereunder, and affirmatively charged:

"That if such foreclosure, sale and deed were in fact made, the same were and are entirely fraudulent, oppressive, unfair, illegal, void, voidable and of no effect and should be set aside and held for naught."

The answer of Effie Isadora Wostenberg, individually, was in substance similar in character. The new matter alleged in the several answers was put in issue by the plaintiff's replies.

The case was tried before a jury, and its verdict, directed by the court, was returned on March 29, 1923, awarding possession of the property described in plaintiff's petition, to him. The same date, judgment was entered upon this verdict. April 3, 1923, Effie Isadora Wostenberg, individually and as administratrix, filed her motion for a new trial on the grounds: 1. That the verdict, decision, and judgment rendered in

the action were not sustained by sufficient evidence and were contrary to law, and 2. That errors of law occurred at the trial, to which exception was duly taken by the "above named defendant."

Possession of the premises was yielded by the administratrix to plaintiff or his agent, under the judgment aforesaid, without the issuance of any writ pursuant to it, about a week after its rendition. He took over the property involved and, as he says in his testimony, farmed it for one year himself, and then rented it for two or three years. When Healy took possession, he found the lands badly seeped, parts of it unfit for cultivation, and he put in about a $10,000 expenditure for drainage of the land in an endeavor to keep it from bogging. It seems this drainage benefited also some other lands owned by him. He also paid delinquent taxes on the premises, and continued to pay the taxes thereon until the property was sold.

On July 18, 1927, he sold a portion of the land to one Frank Kikuchi by a written contract for a warranty deed, and at a named consideration of $14,000, payment to be made by "the customary crop share each year that is customarily paid by a tenant to a land owner ,in the vicinity of Worland, Wyoming," and full payment being required to be made on or before ten years from January 1, 1928. Kikuchi entered into possession March 1 of that year, and has since remained so, making improvements on the land to the extent of some $1,500. The contract shows endorsed credits thereon paid by the vendee beginning December 8, 1928, to and including November 15, 1930, totaling $4,151.76.

On July 18, 1927, Healy also sold a part of the remaining portion of the land to one J. M. Olson by a written contract for warranty deed, the consideration being therein designated as $7,000, the terms of pay-

ment substantially similar to those in the Kikuchi agreement, but full payment was required to be made on or before ten years from the contract's date. Olson himself took possession of this land March 1, 1928, and has since then held it and farmed it. His contract shows endorsed credits thereon paid by this vendee commencing December 10, 1928, to and including November 23, 1929, totaling $1,847.01.

On August 11, 1927, Healy then sold the remaining portion of said land to one Henry Wostenberg, the son of the former owner of the land, the written contract between the parties also resembling, generally speaking, so far as its terms are concerned, those of the sales agreements already described. The consideration recited therein was $14,000, and the final payment on the purchase price was fixed as due on January 1, 1938. Wostenberg, like the other purchasers, took over possession of the land under this contract March 1, 1928, and since then has lived thereon with his family. This contract shows endorsed credits thereon paid by him commencing August 11, 1927, to and including November 2, 1932, totaling $6,014.40.

The motion for a new trial above mentioned was, after more than six years had elapsed, finally taken up for consideration by the court on April 30, 1929, arguments by the parties being submitted on that date. July 23, 1929, the motion was sustained by an order which granted the moving defendants a new trial. It appears that this order was never brought up for review by this court, although certain preliminary steps looking to that end were taken.

October 7, 1930, the administratrix filed her petition in the cause, setting forth a resume of the history of the case to the entry of the judgment above mentioned. The surrender of possession of the premises by the petitioner to the plaintiff, pursuant to the judgment

aforesaid, was thereupon pleaded, and also the entry of the order granting petitioner, both in her representative and individual capacity, a new trial in the action. The prayer of the petition was that, on these facts, an order be made requiring the issuance of a writ of restitution to the Sheriff of Washakie County, directing him to restore possession of the premises aforesaid to the petitioner.

On February 11, 1931, the plaintiff, by his attorney, paid the costs in the case and filed therein a written statement purporting and undertaking to dismiss the action, and this fact was thereafter set forth in a supplemental petition filed by the administratrix on April 7, 1932. On the 20th of the month last mentioned, the plaintiff then filed his petition in the action, requesting that an order be made permitting him to file his answer to the several petitions of the administratrix for restitution, and an order of such a character was, after hearing had on the matter, duly made the same day. The answer thus allowed was also immediately placed in the files of the case that day. It embodied six alleged defenses. The first defense was a denial of each of the allegations of the aforesaid petitions of the administratrix, except as admitted by this answer. In the second defense, the principal steps previously taken in the action, up to and including the alleged dismissal thereof by the plaintiff, were recited, and it was further alleged that no writ of possession or other process were ever issued on the judgment aforesaid, but that the administratrix, having voluntarily abandoned the premises about April, 1923, the plaintiff entered into possession thereof, and has since remained there undisturbed. The third defense set out that plaintiff was the owner and entitled to the possession of the premises by virtue of the mortgage foreclosure and sheriff's deed aforesaid, and then alleged the voluntary surrender of the premises by the administratrix without issuance of

legal process. The fourth defense also claimed an abandonment of the premises by the administratrix; that plaintiff was the holder of the mortgage indebtedness above described, in default since January 16, 1922; that plaintiff, finding the premises vacant, entered thereon to protect his mortgage security, the lands being farm lands, and were becoming unfit therefor through seepage; that plaintiff put in drainage at a cost to him of about $10,000; and that he was entitled to retain possession of the lands as mortgagee in possession. The fifth defense averred the several sales to Kikuchi, Olson, and Wostenberg, hereinbefore described, their taking over possession of the lands, and their acts in connection therewith; that these parties held their title and possession under plaintiff, without knowledge that the administratrix had or claimed any right to the possession of the premises. As a sixth defense, it was alleged that the administratrix, having peacefully surrendered possession of said premises to the plaintiff, and no counterclaim having been filed by her, the plaintiff on February 11, 1931, filed a dismissal of the case. A reply was on May 23, 1932, filed, which, in the main, denied generally the allegations of plaintiff's answer.

On the application of the administratrix, the matter was on December 20, 1932, assigned to another judge for disposition. January 9, 1933, it was heard before the court without a jury, with the result that the judgment first above described was entered, and of which complaint is now made.

For the appellant, it is contended that the record establishes that the premises in controversy were surrendered to plaintiff by the petitioner voluntarily and without compulsion through legal process, and upon this premise it is urged that restitution of possession should not have been awarded. Gould v. McFall, 118 Pa. 455, 12 Atl. 336, 4 Am. St. Rep. 606. But we can-

not accept such premise as altogether correct, and this is said entirely laying aside the rule required to be applied in this court to the conflict in the testimony relative to what occurred in open court upon the rendition of the judgment requiring the surrender of the possession of the lands to the then successful party, the plaintiff.

In 2 Freeman on Judgments (5th Ed.), § 1165, p. 2410, the author says:

"One against whom a judgment is entered, if he fails to satisfy it, must expect to see his property seized and sold at a sacrifice, and it is difficult to conceive how his payment of the judgment can give rise to any estoppel against his seeking to avoid it for error. Nevertheless there are cases deciding that one paying a judgment against him precludes all appeal therefrom. The better view, we think, is, that though execution has not issued, the payment of a judgment must be regarded as compulsory, and therefore as not releasing errors, nor depriving the payor of his right to appeal, unless payment be by way of compromise and settlement or under an agreement not to appeal or under circumstances leaving only a moot question for determination."

The text in 4 C. J. 1237, § 3297, dealing with the matter of defenses to an application for restitution upon the reversal of a judgment, citing a number of cases, states it to be the law that:

"While voluntary payment is a defense, the mere fact that the payment was not coerced by execution does not make it voluntary."

In the case before us, when the judgment in the ejectment action was entered awarding possession to Healy, no bond to hold it in abeyance was given. Hence, it became at once binding upon the parties to the cause. Under it, the plaintiff forthwith had the right of possession of the premises and the administratrix was under a legal duty to surrender such possession to him. That no writ or process was issued under the judgment

to actively enforce it, as we see it, made no difference and, assuredly, that fact alone neither increased nor decreased its legal efficacy so far as the parties to the cause were concerned. We consider that the surrender of the possession of the lands by the administratrix to the plaintiff was not voluntary. This, however, would not, as the authorities cited on principle show, prevent the losing party from taking steps to set it aside or secure its review.

One of the defenses interposed by the plaintiff to the petition for restitution was, as we have seen, that plaintiff on February 11, 1931, filed a dismissal of his action, it being asserted that no counterclaim had been filed therein by any defendant. In determining whether this alleged dismissal was operative on the action, in view of the condition of the litigation at the time the filing was made, it is proper to consider some of the legal principles controlling dismissals under our own (Wyo. Rev. St. 1931, § 89-2205) and kindred statutes. In Tibbals v. District Court, 42 Wyo. 214, 292 Pac. 897, 899, 71 A. L. R. 993, this court said:

"Now courts generally hold under a statute like ours or similar to ours, that the plaintiff has the absolute right to dismiss his case without prejudice at any time before trial of the case, if no claim for affirmative relief is on file. The right is fixed by statute and does not rest in the discretion of the court. Wehe v. Mood, 68 Kans. 373, 75 Pac. 476; Northwestern Mutual L. Ins. Co. v. Barbour, 95 Ky. 7, 23 S. W. 584."

After citing additional authorities, the opinion quotes from the opinion in Reed v. Rocap, 9 N. J. L. 349:

"The principle on which this permission to withdraw is founded is that the procedure on the part of the plaintiff is his own, instituted for his own benefit, that in abandoning it he affects or abridges the right of no other person, and as he must pay costs to his adversary he is thereby deemed, in legal contemplation, to make him indemnity for calling him into court; so long, then,

as he can exercise control over the proceedings without interfering with the established rights of another, he is permitted to do so. But whenever such proceedings have occurred, or the suit has so far advanced that any right of the adverse party has been legally established, or may be abridged by a relinquishment of further proceedings, the power of the plaintiff has ceased."

In the Tibbals case, it was also pointed out that:

"Whether or not the affirmative relief prayed by the defendant prevented the dismissal of the action must be determined as of the time when the motion to dismiss was made (Northwestern Mutual Life Ins. Co. v. Barbour, supra; Boyd v. Steele, 6 Ida. 625, 59 Pac. 21)."

In Central Trust Co. of New York v. Burke, 4 Oh. Dec. 257, the court says that:

"This court has inherent common law and equity powers independently of any statute. One of those powers is to decline to permit a discontinuance or dismissal of an action or suit where it would cause injuctice. See Hickey v. Burt, 7 Taut., 46 and Com. v. Johnson, 36 N. J. Eq., 211, cited by counsel for plaintiff. * * *

"The statute, section 5314, does not pretend to define all of the powers of the court in regard to dismissals.

"Nor does it purport to impair the inherent powers of this court relative to dismissals. It does not divest the court of the power of declining to permit a dismissal of the suit, where it would operate unjustly."

So, in Powers v. De Cesare, 193 N. W. S. 294, 296, we find this language used:

"As a general proposition, a plaintiff is entitled to a discontinuance of an action on payment of taxable costs and disbursements to the time of making the application. This rule, however, is subject to certain limitations, one of which is that discontinuance should not be permitted, where special circumstances exist which render the granting of the relief unjust or inequitable (Willetts v. Browning, 198 App. Div. 551, 190 N. Y. Supp. 606), or where the defendant is inter-

ested in the continuance of the action, or sets up a claim to the property which is in litigation, and asks in his answer affirmative relief in reference thereto."

Construing the law relative to dismissals of actions in Ohio, the National Supreme Court, in Higgins v. McCrea, 116 U. S. 671, 29 L. Ed. 764, 6 Sup. Ct. 557, 563, has said that.

"A counterclaim under the Ohio Code is regarded as a cross action. When it has been set up in an answer the plaintiff will not be allowed to dismiss his suit without the defendant's consent; Wiswell v. First Congregational Church, 14 Ohio St. 31; and it must state facts recognized by courts of law or equity as constituting a cause of action. Hill v. Butler, 6 Ohio St. 207. If a plaintiff dismiss his action against the defendant, or fail to appear, that will not prevent the defendant from prosecuting the counterclaim set up in the suit to final judgment against the plaintiff. Code of Procedure, § 373."

From the opinion in Wiswell v. First Congregational Church, 14 Oh. St. 31, one of the cases cited in the excerpt last above given, we take the following pertinent statement.

"The plaintiff now moves the court for leave to dismiss the action. This motion is resisted by the defendants, upon the ground, that the answers in the case, are, in substance and legal effect, cross-petitions, calling for affirmative action in their behalf. We think this position well taken. In Hill v. Butler, 6 Ohio St. Rep. 216, it was held, that however unskillfully or inartificially an answer may be drawn, yet if it contain facts, which in substance amount to a counterclaim, the court will not permit the defendant to be prejudiced, and will give such affirmative relief as the facts will warrant."

In Quebec Bank of Toronto v. Weyand, et al., 30 Oh. St. 126, the court, in considering the requisites of a pleading to show a counterclaim, briefly queried:

"Are the allegations of the answer such as entitle

the defendant to affirmative relief? If so, it may properly be regarded as a counterclaim. Hill v. Butler, 6 Ohio St. 216; 14 Ohio St. 31."

Turning again to the decisions of this court, in Neiderjohn v. Thompson, 38 Wyo. 28, 264 Pac. 699, 702, we find it plainly intimated, as the judicial utterances already cited show, that there are limitations on plaintiff's right to dismiss an action he has brought, for it was there said:

"It cannot be doubted that under Section 5879, the general rule is that the plaintiff may dismiss his action at any time before the case is at an end, but in case a counter-claim or set-off has been filed, the court can proceed to hear and determine the questions arising under the counter-claim or set-off. Sec. 5880. And there may be circumstances that will qualify the rule in a particular case, and we think that is true here. 18 C. J. 1149, Sec. 7.

"The only issue between the parties was as to whose lien was a prior lien to the stock in question. It has generally been held that where the court has been called upon to settle conflicting property rights between parties, as where defendant by his answer claims a superior right in the property to that of plaintiff and asks that he be declared to be the owner thereof, or to hold a superior right therein to the plaintiff, that this answer constitutes a counterclaim and that in such case plaintiff cannot dismiss."

Under these authorities, we think it plain that at the time plaintiff filed the alleged dismissal of his case, the administratrix, as defendant therein, had pleaded such facts as fairly required the court to consider that she was demanding affirmative relief. Most certainly, she was asking that she be declared to hold a right in a portion of the premises in controversy, superior to that of the plaintiff. It will be recalled that by her answer she had pleaded certain facts and had asserted that, as the widow of Henry August Wostenberg, she claimed a homestead and homestead exemption rights

for herself and her minor children. By her petition for restitution, she had requested that the possession of the property be returned to her. In order to determine the validity of her demands in these matters, it was obviously necessary for the court to adjudicate the plaintiff's rights, also. She was really asking that her title to the property affected by the alleged homestead rights should be quieted as against his adverse claim. These claims advanced by her pleadings, she had a right to have determined, and that speedily. To hold that by a voluntary dismissal, plaintiff could cut off that right, would be to inflict a wrong not only upon the administratrix but upon his own vendees, who were justly entitled to know as soon as possible their actual status in the maze of legal entanglement woven in this case. We must decline to so hold but, on the contrary, decide that the administratrix, having pleaded facts requiring, on their face affirmative relief, and having also asked for such relief, as above indicated, under the situation in which the case stood at the time, plaintiff could not dismiss his action. We are constrained to hold that it is still pending for disposition on the merits.

The principal question remaining for consideration in the case is whether the district court erred in awarding the writ of restitution of possession of the premises, described in plaintiff's petition, against him and "any and all persons holding and in possession under him." This problem arises because, as already related, the judgment of date March 28, 1923, under which the plaintiff took possession rightfully, inasmuch as its operation was not in any way stayed, was by legal consequence of the order granting the defendant's motion for a new trial in the case, vacated more than six years later.

Under the common law, whenever a judgment has been reversed, the courts have generally recognized a right of restitution of that which a litigant has lost

through the judgment being put into effect. There is no doubt, also, that a similar power is held by a trial court where it has subsequently set aside, on its own motion or on the application of the defeated party, one of its own judgments under which the successful suitor has obtained money or property. Such court may direct restitution, so far as practicable, of all property and rights lost by its erroneous action. Northwestern Fuel Co. v. Brock, 139 U. S. 216, 11 S. Ct. 523, 35 L. Ed. 151. But the right to restitution is not an absolute one to be had by any litigant regardless of the justice of the matter. Neither may the true purport of the decision vacating or reversing the erroneous judgment be overlooked. The authorities presently to be cited will illustrate our meaning in these respects.

In Duncan v. Ware's Executors, 5 Stew. & Porter, (Ala.) 119, 24 Am. Dec. 772, it appeared that Ware obtained a judgment against Lawrence etc. Co., and also one against Duncan, summoned as garnishee for $377. The judgment against Lawrence etc. Co., the defendant debtor, was afterwards reversed for irregularity. This action of assumpsit was brought to recover back the money collected on the judgment before its reversal. Holding that restitution should not be made, the court remarked:

"As between the defendants and Lawrence, Rapelye & Co., in equity and good conscience, the defendants certainly are not bound to refund the money. By a judgment, which was irregular, and for that reason reversed, the amount of a debt justly due was recovered and paid to the decedent. In this situation, he was not authorized to renew his suit; his debt was paid, and if Lawrence, Rapelye & Co. were permitted to recover against him, would it not place him in a worse situation than if the money had not been collected? He must wait until they recover from him, before he sues them; or, without suit, he must refund to them money to which he is justly entitled, and which they owe him, that he may be authorized to institute a suit against

them, and recover the same money back again. This can not be tolerated. If an irregular judgment has been obtained, and the money recovered for a debt justly due, proof that the debt was due affords a good defense in an action of assumpsit brought to recover the money back: 1 Har. & J. 405."

Of similar purport from the same jurisdiction is the later case of Carroll v. Draughon, 173 Ala. 338, 56 So. 209.

In Colburn v. Yantis, 176 Mo. 670, 75 S. W. 653, 655, the court, after reviewing one of its earlier decisions, Crispin v. Hannovan, 86 Mo. 160, then said:

"It will be observed that in the case of Crispen v. Hannovan, supra, the judgment of this court was not final or conclusive of the rights of the parties, whereas in the case at bar the judgment of reversal was final and conclusive. There is a difference as to a right of restitution upon a reversal of a judgment, where the decision of the appellate court is final and where it is not. The Ency. Pl. and Pr., vol. 18, p. 877, states the rule to be, 'Where the judgment of reversal is not final, and it appears that the court of review has not decided anything which renders it certain that the plaintiff has not rightly received payment under the reversed judgment, and that on a new trial the plaintiff may be finally adjudged entitled to hold it, restitution will as a rule be refused until the rights of the parties have been ascertained, or the plaintiff may be ordered to bring the money into court to await further directions.' "

It was held in Logan v. McNitt, 3 Bibb (Ky.) 530, that restitution would not be awarded in favor of a person where the circumstances of his claim were doubtful, but he would be left to his remedy by action.

Deciding that restitution should not be awarded where a judgment had been reversed for other reasons than on the merits, the Court of Appeals of Maryland, in Mears v. Remare, 34 Md. 333, said this:

"The merits of the controversy between the parties were not before us, and could not, therefore, be passed

upon. The reversal of the judgment appealed from was simply because it had been rendered without due notice; and upon such reversal the case was left standing in the City Court precisely as if no trial had occurred in that Court, and it was competent to the appellant in that Court to proceed to give the legal notice to the adverse party, and thereupon proceed to trial in the usual way. Upon the determination of the question of jurisdiction by this court, there was no other judgment entered than that of reversal simply; as we supposed that the effect of the reversal on such a question would be well understood by all concerned. To obviate all further misunderstanding upon the subject, however, we shall now order the cause to be remanded, that it may be proceeded with in the City Court, as if no trial had ever taken place there.

"As we have said, the judgment of this Court was simply that of reversal, and no restitution was awarded, for the obvious reason that we had not the merits of the controversy before us, and had no power or jurisdiction to pass upon them."

In Calumet etc. Co. v. Davis, Trustee, 218 Ill. App. 176, where the court had occasion to consider certain principles governing the right to restitution on the reversal of a judgment, we find this language employed: "Furthermore, restitution is not always a matter of absolute right. While it is the law that when a judgment is reversed the parties are to be restored to their original rights so far as it can be done without prejudice to third persons (McJilton v. Love, 13 Ill. 486, 495 [54 Am. Dec. 449]; Ure v. Ure, 223 Ill. 454, 463 [79 N. E. 153, 114 Am. St. Rep. 336]), still it will be noticed that in the present case Davis, trustee, did not ask to be restored to his original rights but sought by his amended petition for restitution a money recovery from the Dock Company. In 18 Encyc. Pl. & Pr. p. 875, it is stated that 'in a large number of cases it is held that restitution is not always of right, and while it is usually granted on a reversal of a judgment, unless there is something peculiar in the case, the court, in its discretion, may refuse it where justice and propriety do not call for it.' In Green v. Stone, 1 Har. & J. (Md.)

405 (referred to with approval in Major v. Collins, 17 Ill. App. 239, 245), it is said (p. 408) : 'The court are also of opinion that the plaintiff cannot recover in this case unless the defendant's retaining the money is contrary to equity and right; that the defendant may resort to any equitable or conscientious defense to repel the claim of the plaintiff, and may show the justice of his original claim.' "

The case of Young v. Brush, 28 N. Y. 667, 18 Abb. Pr. 171, is instructive on the point in hand. There the holding was that where the appellate court directed a new trial, restitution would not be ordered by the trial court unless this was required by the remittitur or the judgment was reversed for such reasons as would prevent the plaintiff from being successful in such new trial. The court in the course of its opinion said:

"There is no case to be found where restitution has been ordered, unless it was clear that the party to whom the money had been paid held it without any right. That point is not clear in this case. The judgment of reversal is not final. A new trial is directed. Nothing has been decided in the appellate court which renders it certain that the money has not been rightly paid to the plaintiff, and that she will be finally adjudged to be entitled to hold it.

"The denial of restitution now will be no bar to the future determination of the question when the rights of the parties have been ascertained, whether the restitution be then sought by action or motion."

In Carlson v. Winterson, 7 Misc. 15, 27 N. Y. S. 368, 369, the court applied the same doctrine in construing a statute dealing with the matter of restitution on the reversal of a judgment. The following excerpt indicates clearly the court's views:

"Section 1323, just cited in parts, says 'the court may make or compel restitution.' It will be observed that the word 'may' is used instead of 'shall,' thus making the order appeal to the sound discretion of the court as to whether it ought to be granted or not. The provisions of this section are similar to those of section

369 of the old Code, where the word 'shall,' instead of 'may,' is used. But even under that section the court of appeals expressed great doubt whether restitution was a matter of strict right, and would in all cases be ordered where the judgment of reversal was not final, but directed a new trial, and for reasons which did not prevent the respondent from further maintaining the action. Marvin v. Mining Co., 56 N. Y. 671. The reasoning of the court in that case is especially applicable to the one under consideration. We did not reverse the judgment upon its merits, but upon a question of law, which did not by any means preclude a recovery in the action, and, until that action was tried, we think, under the circumstances of this case, the order should not have been granted."

The facts in Grant v. Rodgers, 6 Phila. (Pa.) 132, were that Grant, as vendee of the sheriff of the premises which the defendant sought to have restored to him by a writ of restitution, proceeded before two justices, under a state statute, and obtained possession of said premises. The proceedings before the justices and sheriff's jury were reversed on *certiorari*. The defendant then claimed that he was entitled to be restored to the possession he had lost. Denying this claim, after reviewing authorities, it was said by the court:

"Whilst, therefore, in general, restitution is of right, and is as a matter of course, so that a party may be restored to all that he lost by an erroneous judgment or execution, yet upon sufficient cause shown, or to prevent injustice, it will be refused.

"The facts of this case which have come to my official knowledge are these: Whilst holding a former term of the Oyer and Terminer and Quarter Sessions of the Peace, the defendant, Rodgers, offered himself as bail for one Edward J. David, who had been arrested in the city of New York, charged with the commission of a serious crime in this city, and having fled the jurisdiction, had for several years avoided the process of the Court. David did not appear to take his trial, and the recognizance entered into by the defendant, Rodgers, was forfeited, sued out and judgment obtained

against him, upon which execution issued, and the premises from which he was dispossessed by the warrant of the justices, was sold at sheriff's sale, and purchased by Grant. With a knowledge of the facts thus obtained, ought restoration of the premises which he lost, by his own agreement, to stand as surety for David, to be awarded to Rodgers? Certainly not on the merits, for what right has he to complain of a sale of his real estate, and the legal results that have followed, after having insisted that his property should stand pledged by recognizance for the appearance of David in court, to take his trial upon the charge preferred against him, when by his voluntary interposition in David's behalf, a trial has been prevented, and the defendant enabled again to flee the jurisdiction of the Court. The risks of a suretyship were, it is fair to presume, all taken into account by Rodgers, and he now asks the Court to relieve him from some of the consequences of his own act, by invoking a naked legal right in his behalf, a right, however, which will not be accorded to a successful party if it be against equity to grant it. To award the writ in this case, would, we think, be shutting our eyes to the real standing of Rodgers before the Court, and give him, upon a bald technicality, an advantage that we would refuse upon the merits."

From the same jurisdiction, also, the language of Mr. Justice Paxson, in Gould v. McFall, 188 Pa. 455, 12 A. 336, 4 Am. St. Rep. 606, cited above, is frequently quoted by the courts when the matter of restitution requires consideration at their hands. Its tenor is accurately indicated in the case of St. Louis-San Francisco Ry Co. v. Lawrence, (D. C.) 30 F. (2d) 454, 457, a decision which is pertinent here and where the facts were that a railroad, pending an appeal from an interlocutory injunction restraining the State Corporation Commission from interfering with the removal of shops and a division point, accomplished the removal thereof after the defendants had failed to secure the suspension of the temporary injunction by giving bond. When that injunction was thereafter set aside on the

appeal taken, the defendants moved for restitution, asking that the shops be returned to the place whence they had been taken. Declining to grant the motion, the court, three judges sitting, in part said:

"Where the decision on appeal leaves the case undetermined on the merits, and on a final hearing a permanent injunction may be justified, and as in this case, where the decree has been reversed and set aside for error in the matter of procedure, restitution may be denied pending final determination.

"In Gould v. McFall, 118 Pa. 455, 12 A. 336, 4 Am. St. Rep. 606, it was said: 'Restitution is not of mere right. It is *ex gratia*, resting in the exercise of a sound discretion, and the court will not order it where the justice of the case does not call for it, nor where the process is set aside for a mere slip.' See State v. Horton, et al., 70 Neb. 334, 97 N. W. 434.

"In Goltra v. Weeks, 271 U. S. 536, 46 S. Ct. 613, 70 L. Ed. 1074, the court said: 'On an appeal from a temporary injunction it often happens that, where there is a balance of convenience and doubt as to the issue, the *status quo* under the restraining order and the restoration should be maintained until a final hearing.'

"We are of the opinion that nothing can be accomplished, considering and balancing the conveniences in the case, by requiring the plaintiff to remove the shops to Sapulpa pending a final determination of the case. * * * We think an order of restitution should not be made, if at all, until after final hearing, when the ultimate rights of the parties are established."

In the case before us, the judgment awarding possession of the premises to the plaintiff was vacated by an order which merely granted the administratrix a new trial. It did not undertake to pass upon the merits of the case. They were left to be disposed of when the action was reheard. The motion for a new trial was filed within the statutory ten day limit after the entry of the judgment, but was allowed to slumber in the files of the case for more than six years. Meanwhile,

plaintiff, as he had a right to do under the unstayed judgment, had gone into possession of the property involved, had farmed it for several years, had spent thousands of dollars in endeavoring to remedy seeped conditions of the land, and ultimately had sold it all to three parties, at the time unconnected with this litigation. These parties took over possession, have farmed and improved the property, and have made substantial payments to the extent of thousands of dollars on account of the several written contracts of sale. They have also paid the current taxes and water charges upon the land. If it is true that plaintiff and those claiming under him were at all times chargeable with knowledge that a motion for a new trial had been filed, was pending, and, upon its being sustained, the judgment awarding possession to the plaintiff would be vacated, it is also true that the administratrix was chargeable with knowledge of these things which were being done in reliance on that judgment.

The rule is stated in 66 C. J. 1167 that:

"Possession of real property by a person other than the vendor is notice to the purchaser of whatever rights or interests, legal or equitable, in the fee which the occupant has or claims and which would be disclosed on a proper and reasonable inquiry of him. Indeed, such possession is notice of all facts in reference to the title which due and diligent inquiry of the occupant would disclose. Therefore possession is notice of the rights of those under whom the possessor claims."

And 20 R. C. L. 352, discussing the same subject, says:

"It is a general rule of law that the possession of real property is a fact putting all persons on inquiry as to the nature of the occupant's claims as well as the claims of the person under whom he occupies."

Nevertheless, the administratrix took no active or positive steps to push the motion to a speedy hearing, as unquestionably should have been done. It was her motion and, primarily, this duty devolved upon her.

We have not overlooked the affidavit of one of the counsel for the defendant. There it appears in substance that a hearing was had on the motion some time in June, 1923, and the parties were requested by the court to submit briefs, but within no fixed time; that the administratrix submitted a brief, but the plaintiff did not; that nothng further was done about the matter until January, 1925; that then, the plaintiff having denied that he had received a copy of defendant's brief, the parties were again directed to file briefs, this time within a fixed limit, February 15, 1925; that the administratrix submitted her brief, but plaintiff failed to do so. No complaint concerning the nondisposition of the matter seems to have been presented to the court by either of the parties, or any thing more done to urge the disposition of the motion during the more than four years which followed and during which the sales of the property above described took place. It is our view, under the facts shown, that either of the parties could and should have pressed this matter. Both were at fault for not doing so, but as already intimated the more insistent duty to act rested upon the administratrix. Ultimately, there seems to have been no difficulty in obtaining a hearing and decision on the motion, after the six years had elapsed.

Again, the answer of the administratrix presents the claim of homestead in the premises. Her pleading attacks also, in general terms as recited above, the foreclosure sale and sheriff's deed on which plaintiff relies. She charges merely that they were "fraudulent, oppressive, unfair, illegal, void, voidable, and of no effect" —but it needs no authority to establish that without more, such charges afforded no defense to the plaintiff's action. Assuming—but, of course, not deciding— that the claim of homestead is a valid one and can be sustained in the face of the plaintiff's rights, yet it

obviously does not apply to all of the premises the possession of which was sued for in plaintiff's petition. Even what portion it was asserted to affect does not appear, yet the judgment under review returns the possession of all of the property to her.

From a careful and painstaking survey of the circumstances brought to light by the record in this case and from a fair application of the authorities hereinabove cited, it is our conclusion that the district court erred in awarding the writ of restitution of possession of the property aforesaid to the administratrix. Its judgment is accordingly reversed with instructions to proceed with the disposition of the case on its merits. When that has been done, the rights of the parties will have been clarified and more exact justice can be administered in the cause.

*Reversed.*

KIMBALL, C. J., and BLUME, J., concur.