Allen A. ARNDT and Helen E. Arndt,
Appellants (Defendants below),

v.

The SHERIDAN CONGREGATION OF JE-
HOVAH'S WITNESSES, INC., of Sheri-
dan, Wyoming, a corporation, William E.
Riggle and Esther A. Riggle, Appellees
(Plaintiffs below).

No. 3558.

Supreme Court of Wyoming.

June 23, 1967.

---

Bruce P. Badley, R. G. Diefenderfer, Sheridan, for appellants.

Henry A. Burgess, Sheridan, for appellees.

Before HARNSBERGER, C. J., and GRAY, McINTYRE, and PARKER, JJ.

Mr. Justice McINTYRE delivered the opinion of the court.

Allen A. Arndt and Helen E. Arndt, defendants below, have appealed from a judgment of the district court in Sheridan County, in which the court reformed a deed between William E. Riggle and Esther A. Riggle as grantors and the Arndts as grantees.

As far as this case is concerned, we can think of the Riggles as original owners of all of Tract 11 of the Krohn Subdivision, Sheridan, Wyoming. The first conveyance made by the Riggles for part of Tract 11 was to the Sheridan Congregation of Jehovah's Witnesses, Inc. It covered the East 50 feet of the North 100 feet of the tract.

Next, if we accept the testimony and evidence favorable to the successful parties below, the Riggles attempted to convey to the same grantee an additional portion of Tract 11. The additional portion intended would have caused Jehovah's Witnesses to own a total plot consisting of the East 55 feet of the North 200 feet of Tract 11. However, in an attempt to describe the additional portion by metes and bounds, the scrivener of the second deed gave the distance for the south boundary line as 100 feet instead of 55 feet as it should have been. The result was that the metes and bounds description did not close on the north boundary line.

Not only was the additional portion of land intended in the second deed erroneously described, but the instrument itself, after delivery, was not recorded. The consequence of this omission was that the abstract of title for Tract 11 reflected title in the Riggles for all of Tract 11, except for the East 50 feet of the North 100 feet.

Subsequently, the Arndts made an agreement to purchase the remaining portion of Tract 11 from the Riggles. The abstract of title was taken by the parties to an attorney, who drew a deed. Here again, if we accept Riggles' version of what took place, we must conclude the attorney caused the deed to cover all of Tract 11, except the East 50 feet of the North 100 feet, because the abstract reflected ownership of such in the Riggles. Also, an attorney for the Bank of Commerce, which was loaning part of the purchase money, gave title opinions stating the abstract reflected such ownership in the Riggles.

The Arndts now claim they thought they were buying all but the East 50 feet of the North 100 feet of Tract 11, and the Riggles claim the Arndts knew they were dealing for all but the East 55 feet of the North 200 feet. The district court found from the evidence that the deed from the Riggles to the Arndts contained a mistaken description and that the parties had actually intended to except the East 55 feet of the North 200 feet, rather than the East 50 feet of the North 100 feet. The court ordered the deed from the Riggles to the Arndts reformed accordingly, and it is from that judgment that Arndts have appealed.

Although appellants have not directly challenged the right of a court of equity to reform instruments for mutual mistake, they do claim they had a right to rely on the record; and that they should prevail because the second deed to Jehovah's Witnesses was not recorded and appellants did not have actual knowledge of it.

If the evidence was sufficient to establish that Jehovah's Witnesses were in open possession of the disputed area, then (as we will show later on) the Arndts would be charged with notice of the claims of the church. Before getting into that, however,

let us speak of the reformation of deeds. Actually, the court reformed the second deed given by the Riggles to Jehovah's Witnesses in order to correct the description therein. In addition, it also reformed the deed given by the Riggles to the Arndts.

As far as this case is concerned, the Arndts are the appellants. Their contention is that the deed they received from the Riggles should stand and not be reformed. If we uphold the action of the district court in reforming the deed received by the Arndts, then reformation of the second deed to Jehovah's Witnesses would stand unchallenged and we would not need to disturb that reformation.

 Chief Justice Riner wrote an exhaustive opinion for this court, in Russell v. Curran, 66 Wyo. 173, 206 P.2d 1159, 1163–1167, dealing with the circumstances under which written instruments will be reformed. He made it clear reformation would be granted for mutual mistake and that parol evidence is admissible to establish the fact of mutual mistake and in what it consisted, and to show how the writing should be corrected in order to conform to the agreement or intention which the parties actually had.

This brings us to a review of the evidence which was before the trial court concerning a mutual mistake. Of course the evidence was in conflict. However, there was substantial and trustworthy evidence tending to establish what the court found—that the deed from the Riggles to the Arndts contained a mistaken description and that the parties had actually intended to except the East 55 feet of the North 200 feet.

According to the testimony relied upon by the trial court, the land which should have been included in the second deed to Jehovah's Witnesses was surveyed. The surveyor then placed a steel post in concrete at the southwest corner of the enlarged plot. This post was four to six feet high. It was 55 feet west of the East line of Tract 11 and 200 feet south of the North line of Tract 11. The congregation of the church made payment for the additional land, and thereafter they constructed a concrete retaining wall on their supposed West line, which was 55 feet west of the East line of Tract 11. The wall began approximately at their North line, but the record is not clear as to how far it extended to the south.

In addition, the congregation made and surfaced a driveway between the retaining wall and their church. Behind the church and extending to a depth of 200 feet toward the south and a width of 55 feet toward the west, the congregation made a parking area. It was surfaced with gravel, at a cost of $705.50 for material. Labor and the use of construction machinery were donated.

This work was done approximately two years before the Arndts made their purchase.

Services at the church were held three times a week, including a midweek service. Arndt admitted that before he made his purchase he knew the church was using the property; that he had seen members using the driveway and parking area; and that he did not inquire as to whether the church had a lease or permission to use the property. Mrs. Riggle testified that she first showed the property to Arndt which was being offered to him; that the lines of the property were shown to Arndt; and that she described and showed the retaining wall and steel post. Later Mr. and Mrs. Riggle and Arndt went over the tract. Mr. Riggle testified Arndt was then shown the lines of the parking lot belonging to Jehovah's Witnesses.

The testimony of the Riggles was corroborated by Mrs. Inez Reisch, a neighbor. She stated she saw Mr. and Mrs. Riggle and Arndt on the land. At an earlier time, she testified she saw Mrs. Riggle walking the boundaries of the parking lot and heard her telling Arndt where the boundaries were. Her answer to one question concerning what she saw and heard was this:

"She [Mrs. Riggle] said, 'The land goes right down here. This is the south end of the parking lot.' And she came right here to that post that has repeatedly

been in question and she said, 'This is the southwest corner of these folkses parking lot,' and she pointed out the gravel. That much I saw and heard definitely."

The evidence referred to by us was sufficient to justify the trier's finding of a mutual mistake in the deed from the Riggles to the Arndts. Moreover, this evidence and the admissions of Arndt show clearly that Arndt, before his purchase was made, had seen the retaining wall and gravelled parking lot. He saw services being attended at the church and cars being parked in the lot. Under these circumstances the Arndts cannot claim to be bona fide purchasers without notice of the interest claimed by Jehovah's Witnesses, and they cannot rely upon the recording statutes for an indefeasible title.

It has been settled for some time in Wyoming that possession of real property by a person other than the vendor is notice to the purchaser of whatever rights or interests, legal or equitable, in the fee which the occupant has or claims and which would be disclosed on a proper and reasonable inquiry of him. Healy v. Wostenberg, 47 Wyo. 375, 38 P.2d 325, 333–334; Hawkins v. Stoffers, 40 Wyo. 226, 276 P. 452, 457, rehearing denied 278 P. 76. See also Dilts v. Mecham, 48 Wyo. 352, 45 P.2d 920, 925.

But even aside from the fact that Arndts cannot claim to be bona fide purchasers without notice of the claims of Jehovah's Witnesses, the evidence which we have reviewed was sufficient we think to justify the court's finding of a mutual mistake between the Riggles and the Arndts; and to justify the finding that the Riggles actually intended to sell and the Arndts actually intended to buy all of Tract 11 except the East 55 feet of the North 200 feet thereof. Such a finding having been made, reformation was properly ordered, and we are compelled to uphold the judgment.

Affirmed.