## COLBURN v. YANTIS et al., Appellants.

### Division One, July 2, 1903.

*1. **Appeals: EFFECT OF REVERSAL.** Generally, upon a reversal of a judgment, the prevailing party in the appellate court is entitled to be restored to all he has lost by reason of the judgment of the lower court which is reversed.

2. **Receiver of Lands: RIGHT TO POSSESSION: INTEREST OF PERSONS NOT PARTIES.** When land and other property are in possession or custody of the court, through the instrumentality of a receiver, the court will not permit any one, even one claiming under a title paramount to that of either party litigant, to interfere therewith, but will require all persons claiming any title therein to submit their claims to the court for adjudication, and will then direct what disposition shall be made of the property. But in order to affect the possession of the person who has a right paramount to the parties litigant he must in some way be made a party to the proceeding.

3. ———: ———: **APPEAL: REVERSAL: RESTITUTION: APPOINTMENT OF A RECEIVER.** The restitution to which a party is entitled on the reversal of an erroneous judgment is everything which is in posses-

sion of his adversary. If the property is in the possession of a receiver appointed by the court, on the showing that there was an existing mortgage on the land prior to the interest of either party litigant, and neither that receiver nor the person who acquired title at the foreclosure of the deed of trust is made a party to the suit, the prevailing party in the appellate court is not entitled to be restored to possession as against such purchaser or receiver. If the. receiver wrongly sold the property under the deed of trust, the court which appointed him can settle with him.

4. ———: ———: RESTITUTION: SEPARATE ACTION. Where a party has been wronged by the erroneous judgment of a court which is reversed on appeal, it is not necessary for the party seeking restitution to what he has lost to bring a separate action, but all the parties being in court the court will right the wrong with all possible speed.

Appeal from Cass Circuit Court.—*Hon. H. C. Timmonds,* Judge.

REVERSED AND REMANDED *(with directions).*

*R. T. Railey, Chas. W. Sloan* and *Chas. H. Winston* for appellants.

(1)   On reversal of case by Supreme Court defendant Jacob Walter was entitled to be restored to the land he had lost by decree of lower court. Gott v. Powell, 41 Mo. 420; Bank v. Bank, 6 Pet. 8; Railroad v. Brown, 43 Mo. 294; 17 Am. and Eng. Ency. Law (2 Ed.), 810; Marks v. Cowles, 61 Ala. 299; Reynolds v. Harris, 14 Cal. 667, 76 Am. Dec. 459; Major v. Collins, 17 I. App. 239; Smith v. Bohon, 12 Bush 448; McBain v. McBain, 15 Ohio St. 236, 86 Am. Dec. 478; Freeman on Judgments (3 Ed.), secs. 482-3, 5 Am. and Eng. Ency. Law (1 Ed.), 389.   (2)   Neither Mrs. Ada S. Walker, nor those claiming under her, could be innocent purchasers. Hare v. Steedman, 98 Mo. 452; Holloway v. Holloway, 103 Mo. 274; Carr v. Cates, 96 Mo. 271.   (a)   There was no sale of the land under the judgment rendered in favor of Colburn, hence there can be no innocent purchasers as contemplated by section 784, Revised Statutes 1899.   (b)   The lower

court will order money paid under a decree, to be repaid when reversed. · Gregory v. Litsey, 9 B. Monroe 43, 48 Am. Dec. 415; Fleming v. Riddicks, 5 Grattan 272. (c) A party who by his misconduct has procured the rendition of a judgment, which is afterwards vacated, can not justify his acts done by authority of the judgment. 12 Am. and Eng. Ency. Law, 133; Coleman v. McAulty, 16 Mo. 173; Young v. Bircher, 31 Mo. 140. In matters of this sort the party is always liable for the conduct of his attorney. Gott v. Powell, 41 Mo. 416; Pratt v. Conway, 148 Mo. 298; Railroad v. Brewer, 43 Mo. 294; Curd v. Luckland, 49 Mo. 451. Neither he who obtained the judgment, nor his attorney, can claim protection, but must restore whatever has been purchased. (d) Colburn would clearly be bound by the acts and conduct of his attorneys and the receiver in promoting and instigating the sale under the deed of trust. Wood v. Easel, 63 Mo. 193; Landis v. Hamilton, 77 Mo. 554; State ex rel. v. Johnson, 123 Mo. 54; Walsh v. Railroad, 102 Mo. 588. (3) Huber having been appointed receiver to take charge or possession of the land in question, he, as an officer of the court, had charge; the property was in the custody of the court, and no one could interfere with the property in any way or take possession without the order or consent of the court. Neun v. Blackstone B. & L. Assn., 149 Mo. 80; Smith v. Railroad, 151 Mo. 391; 20 Am. and Eng. Ency. Law, 137, 138; Turner v. Railroad, 74 Mo. 602; Heath v. Railroad, 83 Mo. 617; James v. Yore, 142 Mo. 45; Roberts v. Improvement Co., 126 Mo. 460; 1 Freeman on Judgments (4 Ed.), secs. 142-143; Fithian v. Monks, 43 Mo. 502; Janney v. Spedden, 38 Mo. 395.

*Willard P. Hall* for respondent.

(1) There can be no recovery in this proceeding for the items of costs. (a) Defendants never asked the trial court to make any order with respect to any

of said items of costs, and that court took no action upon that matter, neither allowing nor disallowing the same. (b) All said items seem to be proper items of costs, but the circuit court, in compliance with the mandate of this court, rendered judgment against the plaintiff and in favor of defendants for costs; and that judgment, of course, included all costs properly taxable in this case, including the items aforesaid. In other words, judgment has already been rendered on said items against plaintiff and in favor of defendants. (2) There can be no recovery by defendant in this proceeding of the possession of the premises. (a) Plaintiff has never had possession; (b) parties in possession did not get it under the judgment reversed; (c) restitution can not be had on account of anything except what has been done under the reversed judgment, not for the appointment of Huber as receiver, not for the sale by him as trustee, not for the possession of any one under said sale. The law is well settled that restitution is strictly confined and limited to acts done in the very case in which the appeal was taken, and in pursuance of the very judgment which has been reversed. 18 Ency of Pl. and Prac., 874; 3 Cyc. of Law and Pro., 464; Railroad v. Railroad, 108 N. C. 304; Gillig v. Treadwell Co., 151 N. Y. 552; Murray v. Berdell, 98 N. Y. 480; Weaver v. Sheehan, 77 N. W. 528; Reynolds v. Reynolds, 8 Pac. 184; Baxter v. Bank, 85 Tenn. 34; Lewis v. Railroad, 97 Wis. 368, 72 N. W. 876; Miller v. Clark, 52 Fed. 900; Ins. Co. v. Patten, 119 Ind. 416; Kauffman v. Dickensheets, 30 Ind. 258. Restitution on reversal of a judgment can be compelled only from parties to the record or from their beneficial assignees, or, in case of the death of the execution plaintiff, from his executor or administrator. 18 Ency. of Pl. and Pr., 880-881. Restitution can not be compelled from third persons who were bona fide purchasers at a sale under an execution dependent upon a judgment subsequently reversed, or who acquired bona fide collateral rights

Vol 176 mo—43

thereunder, and their rights are in no way affected by the subsequent reversal of the judgment. 18 Ency. of Pl. and Pr., 881; Gott v. Powell, 41 Mo. 416; Noger v. Montgomery, 54 Mo. 577; Jones v. Hart, 60 Mo. 362. (3) There can be no recovery in this proceeding for rents and profits from the premises. Plaintiff received none such, and restitution is confined to what plaintiff received. Where the property has been sold under the judgment, defendant by way of restitution is limited in his recovery against plaintiff to the fruits of the sale, i. e., to the amount received by plaintiff. 18 Ency. of Pl. and Pr., 884; Shields v. Powers, 29 Mo. 317; Jones v. Hart, 60 Mo. 362; McCracken v. Paul, 65 Ark. 553; Richards v. Comstock, 1 Conn. 150; McWaters v. Smith, 25 La. Ann. 515; Bryant v. Fairfield, 51 Me. 149; Peck v. McLean, 36 Minn. 228, 30 N. W. 761; Gay v. Smith, 38 N. W. 171; Little v. Bunce, 7 N. H. 491; Langley v. Warner, 3 N. Y. 327; Bickerstaff v. Dellinger, 1 Murph. (N. C.) 272; Carsell v. Cooke, 8 S. L. R. 296; Bridges v. McAlister, 51 S. W. 603. (4) There can be no recovery in this proceeding on account of the note for $1,538.50 turned over to plaintiff by the receiver, Huber. That was not done under the judgment. Defendants themselves have argued and contended that the note for $1,538.50 was never turned over by Huber to plaintiff under the judgment of the circuit court or any order of said court. They admit that said note was in part payment for the land sold by Huber as trustee; they say that said sale was never authorized by the court and was void; they say that the order of the circuit court directing the receiver to deliver said note to plaintiff was null and void. There is no pretense that either said sale or said order of the circuit court was in any manner connected with the reversed judgment. Under the authorities hereinbefore cited and quoted from, defendants can get no relief on account of said note in this proceeding. (5) Defendants can recover nothing in this proceeding on ac-

count of the $826 paid on the judgment reversed. (a) Defendants never asked the trial court for relief on that account. All that they asked the trial court for were, first, possession of the premises, and, second, the rents and profits thereof from the date of the judgment to the day of the hearing. (b) The payment of said judgment was voluntary. No execution had been issued and there was no possible danger of an immediate seizure of defendants' property in satisfaction of said judgment. Gould v. McFall, 118 Pa. St. 455, 12 Atl. 336; County v. Hawkins, 23 Fla. 280; Baldwin v. Foss, 71 Iowa 389, 32 N. W. 389; Weaver v. Stacy, 93 Ia. 683, 62 N. W. 22; Redmond v. Mayor, etc., 125 N. Y. 632, 26 N. E. 72; Robins v. Latham, 134 Mo. 473; Teasdale v. Stoller, 133 Mo. 651; State ex rel. v. Stonestreet, 92 Mo. App. 214.

MARSHALL, J.—This is an action of ejectment. It is the second appeal in the case. The decision on former appeal is reported in 167 Mo. 562. As therein stated the conclusion then reached was the necessary and logical result of the decision in Walter v. Scofield, 167 Mo. 537. The origin, nature and proceedings in the controversy over the land are set out in those two cases, which must be read in connection with this case, and need not be repeated here. It is only necessary to set out in this opinion such matters as did not then appear to this court, or have occurred since the former decision.

It now appears that while this cause was pending in the circuit court and before any judgment had been rendered in the case, and while the defendants were in possession of the land, the plaintiff showed to the court that there was a deed of trust upon the land for some three thousand dollars which was superior to the title of either of the parties to the case and to that of those under whom these parties claim, and that the interest on said deed of trust was unpaid and the taxes were

delinquent, and that the holder of the deed of trust was threatening to foreclose the deed of trust, and prayed the court for these reasons, to appoint a receiver to take possession of the property. The court thereupon on October 19, 1895, appointed Frank Huber receiver of said property, ousted the defendants from the possession, and put the receiver in possession. The action of the court in so appointing a receiver upon such a showing, was clearly erroneous (Pullis v. Pullis, 157 Mo. l. c. 580), but such error is immaterial in this case upon the present state of the record, and furthermore was acquiesced in by all parties.

The receiver took possession of the land and also of the growing crops, and sold the crops for $145. Thereafter on 4th of February, 1896, the circuit court entered judgment against the defendants for possession, and for forty dollars per month rents and profits, from the date of the institution of the suit until the receiver took possession, amounting in the aggregate to two hundred dollars. From this judgment the defendants appealed, giving a supersedeas bond. The appeal was dismissed on April 17, 1899, and a writ of error sued out on the same day. Under threats of seizure of their property, the defendants thereafter, on September 14, 1899, paid to the plaintiff the sum of $826, in full of the damages and monthly rents and profits from February 4, 1896, to September 14, 1899, and also paid $43.25, the costs in the case. It will be observed that the defendants had been ousted from the possession by the court and the receiver put into possession in October, 1895, and it does not appear why the defendants paid the plaintiff the rents and profits from February 4, 1896, to September 14, 1899, but is perfectly apparent that the defendants could not have been held liable therefor, for they were not in possession of the premises during that time, but the receiver, who was appointed on the plaintiff's motion, was in possession from September 21, 1895, until February 8, 1897, and other persons were in

possession under a superior title, to-wit, the foreclosure of the deed of trust, from February 8, 1897, until September 14, 1899, and they or those claiming under them, are still in possession.

It further appears that Frank Huber, who had been appointed receiver as aforesaid, was also the trustee under the deed of trust aforesaid. The note secured by the deed of trust was owned by John Bachman, who resided in Pennsylvania. He died, intestate, in 1894, and on May 30, 1895, Frank Huber was appointed the administrator of his estate by the probate court of Cass county, Missouri. He had no estate in Missouri except as it arose from owning the note, secured by said deed of trust on this land, and the note was in Pennsylvania at the time of his death and at the time Huber was appointed administrator.

On February 8, 1897, at the instance of the heirs of Bachman, Huber, as trustee, foreclosed the deed of trust to satisfy the note which he held as administrator, and sold the land which he held as trustee. At that sale Lloyd S. Walter, acting as attorney in fact for Jacob Walter, read to the persons present at said sale a letter written to him by John Bachman, extending the time for the payment of the deed of trust upon condition that the interest should be kept paid up, which time had not then expired, and thereupon Lloyd S. Walter tendered to the trustee and administrator, Huber, all unpaid interest and costs, and objected to and forbade the sale under the deed of trust. Huber refused the tender and proceeded with the sale, with the result that Lloyd S. Walter purchased the property for his wife, Ada S. Walter, for $5,310, and paid $500 cash as a part payment. Ada S. Walter then sold the south half of the premises to Porter I. Wallingford for $2,750. On February 18, 1897, Ada S. Walter and Lloyd S. Walter, her husband, and the plaintiff's attorney, met Huber to close the sale. Mrs. Walter paid Huber $3,644.42 in cash (which was made up in part by the $2,750 she

had received from Wallingford), that being the amount due under the deed of trust, with interest and costs, and on account of the balance due on her bid, to-wit, the sum of $1,558.50, she gave Huber a note made by herself and her husband and payable at thirty days. No provision was made for the payment of the balance due on the bid, amounting to $107.08, nor does it appear whether or not it was ever paid. Afterwards Ada S. Walter sold the north half of the property to Porter I. Wallingford, so that he became the owner of the whole tract, and has been ever since in possession thereof.

After the appeal was dismissed, the plaintiff requested Huber, as receiver, to make a report, which he did, on June 2, 1899, showing that he had sold the land, and after paying the mortgage he had loaned the balance realized from the sale, amounting to $1,588.50, upon real estate security, and that he had the note in his possession. At that time Hon. H. C. Timmonds, judge of the Twenty-Sixth Judicial Circuit, was holding the Cass Circuit Court for the purpose of trying certain cases wherein the regular judge, Hon. W. L. Jarrott, had been of counsel. Although called on to try certain cases, for some unexplained reason, the report of the receiver in this case was called up by the plaintiff, without any notice to the defendants, and in their absence, and an order was procured from Hon. H. C. Timmonds on the receiver to turn over the note aforesaid to the plaintiff, the receiver was allowed $47.86 for his services, and he was discharged. The receiver turned over the note to the plaintiff. He sold it to the Bank of Harrisonville for $1,828.84 (the principal and interest) on July 5, 1899, and deposited one half of the proceeds to the credit of Geo. B. Strother, and the other half to the credit of John W. Scott. On November 28, 1899, Ada S. Walter paid the note in full amounting to $1,865.21 to the Bank of Harrisonville.

The deed of trust was not exhibited to the court, nor was any leave of court asked or obtained to sell

under the deed of trust, while the property was in the hands of the receiver. After the sale Huber put Mrs. Walter, and her grantee, Wallingford, in possession. Huber received about two thousand bushels of corn as rent for the year from March 1, 1896, to March 1, 1897, and so far as appears no account has ever been taken thereof, nor in fact of any rent he collected while he was receiver.

After the judgment in this case was reversed on former appeal, in April, 1902, the case came on for further proceedings in the circuit court, on May 23, 1902, before Hon. H. C. Timmonds, sitting for Hon. W. L. Jarrott, who had been of counsel in the case, and the court held that under the opinion and mandate of this court, it was limited to the duty to ascertain whether the plaintiff or any one under him was or had been in possession of the premises under the judgment in the case, and if so, to oust him or them, and to put the defendants back into possession, and that it could not ascertain nor restore to the defendants anything they had lost by virtue of the original judgment of the circuit court in the case. Thereupon the court heard testimony upon the question whether the plaintiff or any one under him had ever been in possession of the land under the original judgment of the circuit court, and found the fact to be that such was not the case, and accordingly refused to issue a writ of restitution to the defendants.

There were no motions or written pleadings filed. The claims made by the parties were *ore tenus*.

The defendants contended that they were entitled to be restored to the possession of the land and to a judgment against the plaintiff for rents and profits at forty dollars per month from the date they were put out of possession and the receiver put into possession on September 21, 1895, until such restitution occurred; or, at any rate, that they are entitled to recover the $826, with interest, paid to the plaintiff on September 14, 1899, together with $43.25 costs, and $82.50 other

expenses incurred and paid in the case, and also the $1,588.50, with interest, paid to the plaintiff by the receiver. The court denied all these claims, and the defendants appealed.

## I.

The first contention of the defendants is that they are entitled to the possession of the property, with a judgment for the rents and profits from September 14, 1895, when they were put out of possession.

This contention is based upon the theory that the plaintiff caused the receiver to be appointed and is responsible for all loss to the defendants that was occasioned thereby; that the land being in the custody of the court, through the instrumentality of the receiver, no one had any right to meddle with it, and it could not be sold without the permission of the court; that if any one had any claim to the land, whether under or superior to the claim of the parties to the suit, it was necessary for them to exhibit their claim to the court and ask proper relief, and that a sale of the land, even under a superior title, was void and conveyed no title, unless it was thus permitted by the court. Hence, the receiver is still in possession and it is the duty of the court to restore to the defendants all they have lost by the former judgments, by putting them back into possession and by giving them a judgment against the plaintiff for the rents and profits since they were ousted by the appointment of the receiver.

The general rule of law is that upon a reversal of a judgment the prevailing party in the appellate court is entitled to be restored to all he has lost by reason of the judgment of the lower court, which is thus reversed.

The Ency. of Pl. and Pr., vol. 18, p. 871, thus states the rule: "Where a judgment or decree of an inferior court is reversed by a final judgment in a court of review, a party is in general entitled to restitution of all

things lost by reason of the judgment in the lower court; and accordingly the courts will, where justice requires it, promptly and as far as practicable place him as nearly as may be in the same condition he stood in previously.'' In support of the text, many cases in America and England are cited, among them Ming v. Suggett, 34 Mo. 364, which fully sustains the text.

In Crispen v. Hannovan, 86 Mo. 160, the plaintiff obtained judgment in ejectment for possession, and rents and profits. The defendant appealed. The plaintiff obtained possession under the judgment. This court reversed the judgment and remanded the cause, with the usual mandate that the defendant be restored to all he had lost by virtue of the judgment. The defendant then filed a motion in the circuit court asking to be restored to possession and for the rents and profits he had lost while out of possession. The circuit court sustained the motion and restored the defendant to possession and gave him a judgment against the plaintiff for rents and profits. The plaintiff appealed. This court held that the effect of the reversal of the former judgment was to restore the parties to the same condition in which they were prior to the rendition of the judgment, but reversed the judgment, for the reason, *inter alia,* that there was no evidence to support the finding and judgment as to the rents and profits.

It will be observed that in the case of Crispen v. Hannovan, supra, the judgment of this court was not final or conclusive of the rights of the parties, whereas in the case at bar the judgment of reversal was final and conclusive. There is a difference as to a right of restitution upon a reversal of a judgment, where the decision of the appellate court is final and where it is not. The Ency. Pl. and Pr., vol. 18, p. 877, states the rule to be, ''Where the judgment of reversal is not final, and it appears that the court of review has not decided anything which renders it certain that the plaintiff has not rightly received payment under the reversed judg-

ment, and that on a new trial the plaintiff may be finally adjudged entitled to hold it, restitution will as a rule be refused until the rights of the parties have been ascertained, or the plaintiff may be ordered to bring the money into court to await further directions.'' The case of Crispen v. Hannovan, supra, falls within this rule, but the case at bar does not.

To this general rule of law there are, however, these limitations, that, ''restitution on reversal of a judgment can be compelled only from parties to the record or from their beneficial assignees, or, in case of the death of the execution plaintiff, from his executor or administrator.

''Restitution can not be compelled from third persons who were bona fide purchasers at a sale under an execution dependent upon a judgment subsequently reversed, or who acquired bona fide collateral rights thereunder, and their rights are in no way affected by the subsequent reversal of the judgment.'' [18 Ency. Pl. and Pr., pp. 880-881.]

And this is the rule in Missouri. [Gott v. Powell, 41 Mo. 416; Vogler v. Montgomery, 54 Mo. 577; Jones v. Hart, 60 Mo. 362.]

In Gott v. Powell, supra, this court said: ''The restitution to which the party is entitled upon the reversal of an erroneous judgment is everything which is still in the possession of his adversary. Where a man recovers land in a real action, and takes possession or acquires title to land or goods by sale under execution, and the judgment is afterwards reversed, so far as he is concerned his title is at an end, and the land or goods must be restored in specie—not the value of them, but the things themselves. There is an exception where the sale is to a stranger bona fide, or where a third person has bona fide acquired some collateral right before reversal [citing authorities]. Upon the reversal of the judgment in the Montgomery Circuit Court, Powell was entitled to full restitution of the land, the equity of no

stranger having intervened, and Gott's title entirely ceased.''

In Vogler v. Montgomery, supra, the plaintiff in ejectment caused the land to be sold under execution, pending an appeal without supersedeas, and became the purchaser of the land, and thereafter sold it to a third person. Afterwards the judgment was reversed, and it was held that while the defendant would have been entitled to restitution if the land still stood in the plaintiff, he was not entitled to restitution against the purchaser, in good faith, from the plaintiff.

In Jones v. Hart, supra, it was said: ''While all rights which have been acquired, bona fide, by any third person, under an execution issued on this judgment, which execution has not been impugned as irregular or invalid, will be respected and preserved, the defendant, whose property has been sold, is entitled to the fruits of the sale. [Shields v. Powers, 29 Mo. 317.] If the property itself is in the hands of the sheriff, or has been transferred to the possession of the plaintiff, through the instrumentality of the execution, he is entitled to be restored to that. [Gott v. Powell, 41 Mo. 420; Railroad v. Brown, 43 Mo. 294.]''

It is clear that the plaintiff is not and never was in possession of this land by virtue of the reversed judgment or in any other manner.

When the court appointed the receiver and ousted the defendant, and put the receiver into possession, the *res* passed into the custody of the court. But the plaintiff was not put into possession. It is the law that when property is in the possession or custody of the court, through the instrumentality of a receiver, the court will not permit any one, even one claiming under a title paramount to that of either party litigant, to interfere with it, but will require all persons claiming any title or interest therein to submit their claims to the court for adjudication, and will then direct what disposition shall be made of the property. [Smith v. Railroad, 151

Mo. 402; Neun v. Blackstone B. & L. Assn., 149 Mo. 74; Wiswall v. Sampson, 14 How. (U. S.) 52; In re Tyler, 149 U. S. 164; Porter v. Sabin, 149 U. S. 480.]

But while this is the law it does not sustain the defendant's contention in this case, for the following reasons: First, this is not a proceeding to recover possession from the person who acquired title and obtained title under the foreclosure of the deed of trust, and that person is not a party to this case, and therefore his rights can not be determined in this case; second, the person in possession is not in possession under the plaintiff nor by virtue of the reversed judgment, but under the deed of trust which is a superior title to that of either of the parties herein; third, if Huber as trustee improperly sold property that was in his possession as receiver, the court that appointed him can settle with him, but Huber is not a party to this case, and does not even appear to have had any notice of this proceeding, but on the contrary has been discharged, whether regularly or erroneously is immaterial in this state of the case, for he is not in court and hence the question of the regularity or legality of his acts as receiver can not be adjudicated in this kind of a proceeding or without giving him a day in court; fourth, the defendants knew that Huber as trustee was foreclosing the deed of trust, and the real defendant, Jacob Walter, was present at that foreclosure sale in the person of his attorney in fact, Lloyd S. Walter, and stood by and saw the land sold and never asserted any such claim as is now set up, and never notified purchasers that he would contest the sale on the ground that the property was *in custodia legis,* and that the trustee had no power to foreclose the deed of trust without leave of court. On the contrary, he objected to the sale solely on the ground that the *cestui que trust* had extended the time for the payment of the debt, upon condition that the interest was kept paid up, and he then tendered the arrears of interest and the costs. Under these circumstances the defendants are

not entitled to restitution of the premises, and especially not in this proceeding.

## II.

The plaintiff never had any title or right to the land. The defendant, Jacob Walter, owned the equity of redemption, which was subject to the deed of trust. The plaintiff caused the defendants to be ousted from possession and caused the receiver to be put into possession on September 14, 1895. Thereafter on February 4, 1896, the plaintiff obtained a judgment against the defendants for possession, and for the rents and profits at the rate of forty dollars per month, up to the time the receiver took possession, aggregating two hundred dollars. The defendants appealed, with a supersedeas. The appeal was dismissed on April 17, 1899. Thereafter, under threat of an execution, the plaintiff collected from the defendants $826 which consisted of the two hundred dollars, and forty dollars a month from February 4, 1896, to September 14, 1899. It is hard to understand how the defendant ever made the mistake of paying any rents and profits after February 4, 1896, for the property was in the hands of the receiver after February 4, 1896, until the sale under the deed of trust on February 8, 1897, and thereafter was in the possession of the purchaser at that foreclosure sale and her grantee, and in addition to all this, the judgment itself did not assess any rents and profits to be paid after the receiver was put into possession. However the mistake occurred, the fact is that the plaintiff asserted a right to collect the $826 from the defendants under the judgment, and threatened to enforce it by execution, and the defendants paid it.

Thus the plaintiff received $826 from the defendants to which he was not entitled, and which he should restore to the defendants, with legal interest.

The plaintiff also received from the receiver the

note for $1,588.50, dated February 27, 1897, and sold it to the bank for $1,828.84, being the principal with interest to July 5, 1899, and that note was afterwards paid to the bank. That note represented the value of the equity of redemption in the land. The plaintiff had no right to the equity of redemption, and therefore he had no right to the money or note which represented the equity of redemption. That belonged to the defendant, Jacob Walter. The plaintiff was enabled to collect that sum by virtue of the proceedings had in this case. The defendants lost that sum by virtue of the proceedings had in this case. The defendants are therefore entitled to recover from the plaintiff $1,588.50, with legal interest from February 27, 1897. That amount constitutes the fruits of the sale under the deed of trust to which defendants are entitled to restitution, instead or in lieu of the land itself. [Jones v. Hart, 60 Mo. l. c. 364.]

The defendants are also entitled to have taxed as costs against the plaintiff all sums expended by them in payment of court costs and also all taxable expenses in appealing the case both on former appeal and on this appeal.

It is objected that the defendants' remedy is not summary as a part of this case, but that it is by a separate action. The defendants are undoubtedly entitled to recover in a separate action, but they are also entitled to restitution in a summary manner in this action. It would be a peculiar law that would take away property by a judgment and then when, on appeal, the judgment was reversed, the defendant should be turned out of court and told to come in again in another suit against the same plaintiff. All the parties to be affected by the restitution are now before the court, and it is the duty of the court to right the wrong done with all possible speed.

It is urged, however, that the defendant can only proceed by motion or scire facias. Inasmuch as the

case must be reversed, the defendant will be granted leave to file a motion in the circuit court asking for the restitution of the items hereinbefore specified.

The judgment of the circuit court is reversed and the cause remanded to that court with directions to hear and determine the case in accordance herewith and to enter judgment for the defendant and against the plaintiff for all those amounts and sums that the plaintiff has heretofore received by reason of any proceeding in this cause and which sums so received by the plaintiff have been lost to the defendants by any such proceedings, and also to tax all the costs in the case against the plaintiff and to enter judgment for the defendants and against the plaintiff for all costs and taxable expenses of appeals which have heretofore been paid by the defendant.

All concur except *Robinson, J.*, absent.