STATE ex rel. UTILITY CONSUMERS
COUNCIL OF MISSOURI,
INC., Relator,

v.

PUBLIC SERVICE COMMISSION of
Missouri, Respondent,

and

Arkansas-Missouri Power Company et al.,
Intervenor-Respondents.

STATE ex rel. William M. BARVICK,
Public Counsel, Relator-Appellant,

and

Kansas City, Missouri,
Intervenor-Relator,

v.

PUBLIC SERVICE COMMISSION of
Missouri, Respondent,

and

Union Electric Company et al.,
Intervenor-Respondents,

Ozark Lead Company et al., Intervenors.

No. 31380.

Missouri Court of Appeals,
Western District.

July 8, 1980.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 4, 1980.

Application to Transfer Denied
Sept. 9, 1980.

William M. Barvick, Public Counsel, Jefferson City, pro se.

Robert L. Hawkins, Jr., James C. Swearengen, Hawkins, Brydon & Swearengen, P. C., Jefferson City, for intervenor-respondents.

Before WASSERSTROM, C. J., and SHANGLER, PRITCHARD, SWOFFORD, TURNAGE, MANFORD and KENNEDY, JJ.

TURNAGE, Judge.

This case involves the question of whether or not Utilities who were ordered to refund surcharges in *State ex rel. Utility Consumers Council of Missouri, Etc. v. Public Service Commission et al.*, 585 S.W.2d 41 (Mo.banc 1979) should pay interest on such refunds from the date of collection. Pursuant to the remand by the Supreme Court to the Circuit Court, that court determined the amounts due by way of refund and the method of making such restitution. The court ordered interest paid on such refund from September 11, 1979, the date the motion for rehearing in *Utility Consumers Council* was overruled.

William Barvick, the Public Counsel, filed a motion with the Supreme Court requesting the court to order the Circuit Court to comply with its mandate by ordering interest on the refunds from the dates they were collected. In opposition to that motion, those utilities affected filed suggestions in opposition suggesting that the Public Counsel's proper remedy was by appeal from the Circuit Court order. The Supreme Court denied Public Counsel's motion by order. Thereafter Public Counsel filed a notice of appeal to this court from that part of the Circuit Court judgment awarding interest from September 11, 1979.

■ A preliminary question concerns the timeliness of the notice of appeal filed by the Public Counsel. The trial court entered an order that the part of its order awarding interest from September 11, 1979, would be considered final for purposes of appeal under Rule 81.06. Rule 81.06 speaks of a judgment entered on only part of the issues presented and which is so designated to be a final judgment. The question arises as to what impact the use of the language "final judgment" in Rule 81.06 has on Rule 81.-05(a) which makes a judgment final for purposes of appeal thirty days after it was entered. Rule 81.06 refers to § 512.020, RSMo 1978. A reference to this section indicates that the language in Rule 81.06, which speaks of a separate judgment as being final when entered, is used to distinguish that judgment from an interlocutory judgment. In other words, the separate judgment is a final judgment as to the issues concluded thereby and is not to be considered interlocutory but may then be appealed. The provisions of Rule 81.05, which defines finality of a judgment for the

purposes of ascertaining the time within which an appeal may be taken, remains intact. Thus, a separate judgment becomes appealable forty days after entry the same as any other judgment under Rule 81.04(a). The notice of appeal filed by Public Counsel in this case thirty-eight days after the entry of separate judgment under Rule 81.06 was timely since it was filed within forty days after the entry of such judgment. *State ex rel. Nilges v. Rush*, 532 S.W.2d 857 (Mo. App.1975).

In oral argument of this case, counsel for the Utilities stated they are not contesting the obligation to pay interest, but only the starting date. They contend the trial court's judgment beginning interest on September 11, 1979, is correct. Reversed.

■ This court is confronted at the outset by the Utilities' motion to dismiss this appeal or to transfer it to the Supreme Court for lack of jurisdiction. The Utilities contend this appeal calls for a construction of the mandate of the Supreme Court, a function exclusively within the power of that court. In *Utility Consumers*, at page 60, the court held it had inherent power to afford redress to the parties and the court ordered the case remanded "to the circuit court for a determination by it of the amounts due as a result of the surcharge and to whom, the proper method of restitution, and in connection therewith a determination of such other matters and the making of such other orders as are necessary to and consistent with this opinion."

In *Ohio Oil Company v. Thompson*, 120 F.2d 831, 835[5] (8th Cir. 1941) the court held that a decision of a trial court "of issues not submitted to the Supreme Court, of new issues, and of questions left open may be appealed to the Circuit Court of Appeals in all cases where that court would otherwise have jurisdiction." Here, the question is not one of construing the mandate issued by the Supreme Court but rather is a new question as to the right of those persons to whom the Supreme Court ordered refunds to collect interest from the date the charges held to be illegal were collected. This falls under the rule stated

in *Thompson* and for that reason jurisdiction of this appeal is vested in this court.

■ As to the merits of this appeal, the language of the Supreme Court must be considered when ·it ruled the collection of the surcharge was illegal. The court, at p. 59–60[21] noted that the Utilities had no vested right or legitimate expectation in the monies collected under the surcharge even though such surcharge had been authorized by the Public Service Commission. The court stated that to permit the Utilities to retain these charges would be a windfall to the Utilities and would leave the consumers without a remedy for the recovery of these unlawfully collected charges. The court stated: "We have an inherent power to afford redress for an erroneous judgment which results in the paying over of monies from one to another without support of law and to direct that restitution be made." Among the cases cited in support of this statement are *Arkadelphia Milling Co. v. St. Louis S. W. Ry. Co.*, 249 U.S. 134, 143–46, 39 S.Ct. 237, 241–242, 63 L.Ed. 517 (1919); *State ex rel. Abeille Fire Ins. Co. v. Sevier*, 335 Mo. 269, 73 S.W.2d 361, 366–67, 371–73 (banc 1934), cert. denied, 293 U.S. 585, 55 S.Ct. 99, 79 L.Ed. 680 (1934); *Aetna Ins. Co. v. Hyde*, 327 Mo. 115, 34 S.W.2d 85, 88 (banc 1930).

In *Arkadelphia Milling* the United States Supreme Court was considering railroad overcharges and the allowance of interest on such overcharges. The court stated 249 U.S. at p. 146[11], 39 S.Ct. at p. 242: "The contention that there was error in allowing interest upon the amount of the overcharges is unsubstantial. The damage was complete when the overcharges were made, and if they were wrongfully made and without consent of the shippers, interest ran from that date on general principles." Here, the court held the collection of the surcharge was unlawful and illegal, even though such rate had been authorized by the Public Service Commission. Under *Arkadelphia Milling*, such wrongfully collected charges carries with it interest from the date of collection.

The United States Supreme Court came to the same conclusion on the imposition of interest from the date of overcharges made on the sale of natural gas in *United Gas Improvement Company v. Callery Properties, Inc.*, 382 U.S. 223, 86 S.Ct. 360, 15 L.Ed.2d 284 (1965) when it stated at 228[8–11], 86 S.Ct. at 364: "And the imposition of interest on refunds is not an inappropriate means of preventing unjust enrichment."

In this case the court termed the collection of the surcharge as a windfall. This is tantamount to holding the retention of the surcharges would constitute unjust enrichment. In *Utility Consumers* the court treated the monies collected under the surcharge the same as monies which had been paid or collected under an erroneous judgment. 585 S.W.2d 60.

The law in Missouri is clear in its treatment of restitution of money or property obtained under an erroneous judgment. In *Aetna Ins. Co., supra*, the court stated: "An appellant's right of restitution on reversal of judgment is well recognized." 34 S.W.2d 88[7–10]. The court there held that even when an appellate court enters a general order of restitution the enforcement of such order should be left to the trial court. That is the situation here. The Supreme Court ordered the money collected under the surcharge to be returned but left to the trial court the formulation and the enforcement of the restitution of these monies. In *State ex rel. Abeille Fire Ins. Co. v. Sevier, supra*, the court stated at 73 S.W.2d 366[2]: "It is settled law that upon the mere reversal of an erroneous judgment, without more, the appellant is entitled to have restored to him all property and property rights which he lost by reason of such erroneous judgment."

In *DeMayo v. Lyons*, 228 S.W.2d 691, 692[1, 2] (Mo.1950) the court stated: "The general rule is that, upon reversal of a judgment against him, the appellant is entitled to restitution from the respondent of all benefits acquired under the erroneous judgment during the pendency of an appeal." The court held at page 694[6] that a party who had had property seized under execution on a judgment later reversed was entitled to recover the amount realized through the sale of that property and to the payment of interest upon such amount from the date the levy under the execution was issued.

In *Colbern v. Yantis*, 176 Mo. 670, 75 S.W. 653, 657 (1903) a party collected money under a judgment later reversed and the court held the other party was entitled to receive the amount taken from him with interest. In that case a note was also received under the judgment later reversed and that note was sold by the party collecting it with interest from the date of the note. The court held the party from whom the note had been taken after the judgment had been reversed was entitled to recover the face value of the note together with interest from the date of its execution.

The reason for allowing interest from the date property is seized under an erroneous judgment is to restore to the person from whom it was taken everything lost by reason of the judgment. This can be done either under principles of restitution which become applicable when property is seized under an erroneous judgment, 5B C.J.S. Appeal and Error § 1983, or under the direction in the mandate. *DeMayo, supra.* The usual language of a mandate which reverses a judgment is that the appellant be restored to all things which he has lost by reason of the judgment. That is the language in the mandate sent to the Circuit Court in this case. To restore an appellant to all things lost by a judgment requires the payment of interest on money held, otherwise a party is not made whole if he loses his money and is not compensated for its loss of use. *DeMayo, supra.* Here, the consumers who paid surcharges illegally collected will not have been restored to all things lost if they are not awarded interest from the date the charges were collected to compensate for the loss of use of their money.

■ It is clear the court in *Utility Consumers* was treating the collection of the surcharge in the same manner as a party who collects a judgment which is later held to be erroneous and reversed. It is clear

that under the law in this state when property is seized under a judgment which is later reversed the owner of the property is entitled to recover it or its value together with interest from the date it was seized. The only date in this case from which interest would begin which would comply with the above principles would be the date the illegal surcharges were collected. Any later date would leave the consumers uncompensated for the loss of use of their money.

■■ The remaining question has to do with the rate of interest. Although interest in this case is payable on the general principles outlined above applying to restitution of property acquired under an erroneous judgment, still the restitution is being made under order of court as provided in § 408.040, RSMo 1978, so the rate therein will be applied. That section provided for interest at the rate of 6% per annum until September 28, 1979, when the rate was increased to 9%. The increase in the interest rate is to be applied prospectively only. *Senn v. Commerce-Manchester Bank,* 603 S.W.2d 551 (Mo.banc 1980). See also *White v. St. Louis-San Francisco Railway Company,* 602 S.W.2d 748 (Mo.App.1980). Therefore, the Utilities in this case should be required to pay interest on the monies collected under the surcharge which was ordered to be refunded in *Utility Consumers* from the date it was collected until September 28, 1979, at the rate of 6%. After September 28, 1979, the rate of interest shall be 9%.

This court was informed in oral argument that the Utilities had prepared lists of consumers and had calculated the amount of refund due to each. This information was submitted to and approved by the circuit court. Presumably each consumer was given interest on the amount due him from September 11, 1979, to the date the judgment was entered on October 19, 1979. For the reasons stated herein, the interest awarded on the amount due each consumer shall be calculated from the date or dates such amount was collected from that consumer. The interest shall be calculated at the rate of 6% until September 28, 1979.

For the period from September 29, 1979, to October 19, 1979, the interest shall be calculated at the rate of 9%. The total amount thus calculated by the court to be due each consumer shall be entered as a judgment as of October 19, 1979. Thereafter the refund, plus interest, awarded each consumer shall bear interest at the rate of 9% from October 19, 1979, until paid. *Senn, supra.*

The judgment is reversed and the cause is remanded with directions that the court ascertain the names of consumers to whom refunds are due and the amounts thereof, and to add to the amount of such refund interest from the date or dates the illegal surcharge was collected at the rate of 6% until September 28, 1979, and interest at the rate of 9% beginning September 29, 1979, until October 19, 1979, the date of the original judgment entered in this cause. The combined amount of refund and interest due each consumer shall bear interest at the rate of 9% from October 19, 1979.

All concur.